### KARDON et al. v. NATIONAL GYPSUM CO. et al.

#### Civil Action No. 6203.

District Court, E. D. Pennsylvania.
Aug. 19, 1947.

See also 69 F.Supp. 512.

Henry Arronson and Simon Pearl, both of Philadelphia, Pa., for plaintiff.

Edward H. Cushman, of Philadelphia, Pa., and Finck & Huber, of Buffalo, N. Y., for National Gypsum Co.

Robert T. McCracken and Samuel Fessenden, both of Philadelphia, Pa., for William Slavin and Leon A. Slavin.

Roger S. Foster, of Philadelphia, Pa., for Securities and Exchange Commission, amicus curiae.

KIRKPATRICK, District Judge.

Leon A. and William Slavin, defendants, having purchased the plaintiffs' stock in a Michigan corporation and its affiliate, sold the bulk of the corporate assets to the defendant, National Gypsum Company. The plaintiffs brought this action, alleging that the Slavins had violated Sec. 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and the Commission's Rule X–10B–5 in connection with the purchase of their stock and asking, among other things, that the Slavins account for profits realized by them through the sale of the corporate assets.

The acts of the defendants specified in the complaint constitute a violation of the Act. Sec. 10(b) makes it unlawful to use any deceptive device, in contravention of the Commission's rules, in connection with the purchase of any securities registered or unregistered. Rule X–10B–5 specifically makes it unlawful "to employ any device * * * to defraud, * * * to omit to state a material fact necessary * * * to make the statements made * * * not misleading, or to engage in any act, practice, or course of business which * * * would operate as a fraud or deceit * * *." Under any reasonably liberal construction, these provisions apply to directors and officers who, in purchasing the stock of the corporation from others, fail to disclose a fact coming to their knowledge by reason of their position, which would materially affect the judgment of the other party to the transaction.

Jurisdiction of the person of the Slavins was obtained under Sec. 27 of the Act, 15 U.S.C.A. § 78aa, which authorizes extraterritorial service of process in suits to enforce any liability or duty created by the Act. On a motion to dismiss this Court held that, although not expressly provided for in the Statute, a remedy by civil action to enforce such duties and liabilities was available to the plaintiffs. The duty created is that of disclosure and the complaint and the evidence show that this suit was brought to enforce that duty. The liability to account for profits is the correlative liability attendant upon the breach of that duty.

Although a good deal of testimony was taken, the facts, except as to one relatively unimportant detail, are practically undisputed.

The plaintiffs, Morris and Eugene B. Kardon (father and son), and the defendants, Leon A. Slavin and William Slavin (brothers), owned all the capital stock of Western Board and Paper Co. and Michigan Paper Stock Co., its affiliate, each of the four holding one fourth. Western was engaged in manufacturing paper board and other paper products, having its plant located at Kalamazoo, and Michigan was a purchasing agent dealing chiefly in waste paper and similar materials for Western. All four were officers and together constituted the entire board of directors, the two Slavins and Eugene Kardon living in Kalamazoo and being actively engaged in operating the plant and Morris Kardon living in Philadelphia. All four were familiar with the plant, assets and business of the corporation.

Prior to March 18, 1946, Leon Slavin had agreed for the corporation, by written instrument, considered by the parties to it to be binding, to sell to National Gypsum, the plant and equipment of Western for the sum of $1,500,000. Corporation income taxes were not assumed by the purchaser, but the corporation and of course the Slavins, ultimately, remained liable for these taxes. There were additional terms, which included the purchase by National Gypsum of the

inventories of materials and supplies at cost or market in addition to the price of the plant, retention by the corporation of accounts receivable and inventories of finished goods, and an agreement by National Gypsum to sell to the corporation one third of the' output of the plant over a three-year period, during which time the corporation was to have the use of one of the buildings for a dollar a year. The agreement was signed by Leon Slavin in his capacity as Executive Vice President of Western.

On March 18, 1946, the Slavins purchased all the stock of the Kardons in the two corporations, Western and Michigan, for $504,-000. At that time the Kardons knew nothing whatever about the negotiations with National Gypsum, and the Slavins did not disclose any of the facts relating to them although admittedly, at the meeting at which the sale of the stock was consummated, Leon Slavin, in answer to a preliminary question by the Kardons' attorney, whether he had made any agreement for the sale of the stock, answered No.[1]

Having acquired the plaintiffs' stock, the Slavins proceeded to consummate the transaction with National Gypsum. On March 23, a formal contract of sale was executed in which the Slavins themselves, rather than the corporation, appeared as the sellers and which substantially incorporated the terms of the preliminary agreement. Finally in February of 1947, the Slavins, having themselves acquired title from the corporation, conveyed the property to National Gypsum. The Slavins thus obtained $1,500,-000, plus whatever other sums they were paid under the agreement and subject to diminution in such amount as may be necessary to meet any unliquidated income tax liability.

Turning now to the remedy. In essence, the transaction is a sale by directors, in their own interest, of corporate assets, otherwise than in the course of busi-

ness and without disclosure to stockholders. The plant and equipment belonged to the corporation, and the Slavins were acting for the corporation at the time when Leon Slavin executed the preliminary agreement. The fact that the actual conveyance was by them as individuals and the fact tnat it was not made until they had acquired all the outstanding stock are immaterial. In dealing with cases of this kind the law disregards forms and looks at the substance. In Dunnett v. Arn, 10 Cir., 71 F.2d 912, 919, two directors of a corporation in order to assist another company to acquire the assets of their corporation sold their own stock at one price and then sent a telegram to the other stockholders, recommending that they sell their stock at a lower figure, without disclosing their own advantageous sale. By this means the purchasing company acquired all the capital stock. It then proceeded to absorb the old corporation and so acquire its assets although the only actual transfer was of the capital stock of the company. The Court said, "The transaction, * * * while in form a sale of stock, in substance and effect was a sale of the assets of the Operators Company to the Sunray Company, and a corporate act * * *". The method adopted by the defendants in Dunnett v. Arn, supra, was not the same as that of the defendants in the present case, but the underlying principles of the two cases are identical, and I consider the decision as fully justifying the view that the transaction in the present case was in reality a sale of corporate assets. This being so, the Slavins are in no different or better position than if they had adopted the conventional technique of arranging for a secret bonus from the purchaser for their part in a straight sale of the corporation's assets.

The defendants now contend that the plaintiffs are not entitled to a decree because they have not proved that the defend-

---

[1] At this point there is the only substantial dispute of fact in the case. I accept the plaintiffs' version to the effect that the question expressly mentioned the assets as well as the stock. However, it makes very little difference because even if the version given by the defendants is accepted it is perfectly clear that, in the light of the circumstances under which Leon Slavin's answer was made, he omitted to state a material fact necessary to make his answer not misleading, Rule X-10B-5(2).

802

ants made any profit out of the transaction.[2] It is not necessary that they do so. The plaintiffs' case was established when the defendants' duty and its breach were proved. This was done by showing that the defendants were officers and directors of Western and that they disposed of the bulk of the corporate assets to an outsider, for their own benefit, without disclosing the transaction to the plaintiffs or giving them an opportunity to participate in it. The remedy follows, which, in this case, is an accounting to ascertain and restore to the plaintiffs their proportionate share of the profits, if any.

█ The substance of the Slavins' argument is that they are trustees only as to the profits and that unless the plaintiffs show the existence of profits there is nothing to which a trust can attach and their action consequently fails. The argument is a legalistic one at best and there is no reason for the Court to adopt it, especially in aid of a trustee who has dealt with trust property for his own benefit or to open a new avenue of escape for such a trustee from the plain obligation which the law puts upon him to account for what he has done. The trust res in this case was the corporate assets, not the profits, and when the assets were disposed of by an undisclosed contract of sale the cause of action was complete. Certainly the plaintiffs could have elected to ask for rescission of the transfer and if

they had it can hardly be argued that it would have been essential to their case to show that the defendants realized any profit from the deal.

█ If the plaintiffs' cause of action were solely for common law deceit they would of course have to prove a loss as part of their case, the measure of which would be the difference between the value of their stock at the time they parted with it and the amount the defendants paid for it; and the defendants' profits would be admissible, but not conclusive evidence upon that issue. There are many decisions to this effect, and the rule is not questioned. They have no application, however, in a case in which the action is not for damages for deceit but is for a share of the profits of the transaction.

█ In order that what has been said may be understood in its proper frame, it might be well to repeat that this action is grounded upon a violation of the Securities and Exchange Act of 1934. The Act does no more than forbid certain types of conduct, which it defines in general terms, in connection with the purchase of securities. It does not even provide in express terms for a remedy, although the existence of a remedy is implicit under general principles of the law. Perhaps all that would be necessary for this decision would be the determination that the conduct of the defend-

---

[2] As the record stands, the controversy is a barren one. Having proved the facts, as stated in this opinion, the plaintiffs rested. The Slavins did not move to dismiss but proceeded with their proof and called an accountant who, having made an estimate of the probable amount of the liabilities assumed by the Slavins in their contract with National Gypsum, developed a theory to the effect that the Kardons were better off than they would have been had the corporation made the deal directly with National Gypsum; in other words, had they participated equally with the Slavins in it. The plaintiffs contended that this evidence should not be considered and that the only issue before the Court was whether the plaintiffs were entitled to a decree for an accounting, arguing that the testimony of the expert belonged properly in the supplementary accounting proceeding. No ruling was made at

that point but the plaintiffs without objection by the defendants, were given, by the Court, the right to call evidence to rebut the accountant's testimony, if the Court came to the conclusion that it was a necessary part of the plaintiffs' case to show that the defendants had actually realized a profit. With this exception, both sides have rested.

If I had any doubt of the correctness of the plaintiffs' position I would simply reserve passing on the main issue until an accounting could be had (before either the Court or a special master) as part of the main case to determine whether or not any profits accrued to the defendants, but I think that the plaintiffs' position is clearly right and I see no reason why the main issues should not be disposed of now and a decree entered.

...nts came within the terms of the Act and the remedy sought is one provided by the law for redress. However, the broad terms of the Act are to be made effective in a case like the present one through application of well known and well established equitable principles governing fiduciary relationships. These principles are fundamental in all jurisdictions and the decisions of both Pennsylvania and of Michigan fully support the conclusions reached above.

■ A stipulation filed of record in this case May 12, 1947, withdraws every allegation in the complaint pertaining to any alleged wrongdoing by National Gypsum Co. and likewise deletes from the prayer for relief a request that National Gypsum Co. account to the plaintiffs. Therefore, the word "defendants" as used in this opinion is to be understood as referring to the Slavins. However, National Gypsum Co. having, by stipulation, agreed to abide by any lawful decree of the Court affecting it, its motion to dismiss is denied.

The statements of fact contained in this opinion may be taken as special findings of fact and the statements of law as conclusions of law.

### Conclusion of Law.

The plaintiffs are entitled to a decree against the defendants for an accounting as prayed for in the complaint.

A decree may be submitted in accordance with this opinion including an order for the appointment of a master to conduct an accounting.