**J. E. STEVENS, Appellant,**

v.

**Hollie VOWELL, Appellee.**

**No. 7823.**

United States Court of Appeals
Tenth Circuit.

March 16, 1965.

E. J. Skeen, Salt Lake City, Utah (J. D. Skeen, Salt Lake City, Utah, on the brief), for appellant.

Irving H. Biele, Salt Lake City, Utah (James A. Murphy, Salt Lake City, Utah, on the brief), for Appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellee, Vowell, brought the action below against appellant, Stevens, and others, not parties here to recover $20,-000 under the provisions of Section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C.A. § 78aa. Trial was had to the court and Vowell was granted judgment against all of the de-

fendants but only Stevens has appealed. He makes three contentions here: (1) The court lacked jurisdiction of the subject matter and the person of appellant; (2) insufficiency of the evidence; and (3) erroneous rulings of the court during the trial.

It was alleged in the complaint that: The action arises under Section 10 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78(j), and Rule X–10B–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5; jurisdiction is invoked pursuant to 15 U.S.C.A. § 78aa; Vowell had conversations with the defendants during October and November, 1962, regarding an investment in an automatic archery lane to be constructed in Salt Lake City, Utah; on November 8, 1962, he entered into two agreements with the defendants, copies of such agreements being attached to and made a part of the complaint; the first agreement was between Vowell and the defendant, Worldwide Indoor Automatic Archery Lanes, Inc., (hereinafter referred to as Worldwide) and related to a total investment by Vowell in the sum of $20,000; the second exhibit was denominated "Agreement to Form a Corporation" and it provided for the distribution of corporate stock in a corporation to be formed in Utah with 25 shares of no par common stock to be distributed to Vowell for the $20,000 purchase price; Vowell paid Worldwide the $20,000 and demanded performance of the defendants according to the terms of the agreement, which they failed and refused to do; instrumentalities of interstate commerce were used by the defendants, acting in concert, in a course of business which operated as a fraud and deceit upon Vowell and resulted in their obtaining from him, upon spurious representation, the $20,000; and the acts and conduct of the defendants constituted a manipulative and deceptive device in connection with the sale of security to Vowell, in contravention of Rule X–10B–5 promulgated by the Securities and Exchange Commission.

The factual allegation of the complaint were established by the evidence adduced at the trial. The evidence also shows that Worldwide was organized as a corporation under the laws of the State of Washington with its principal office in Seattle. Its purpose was the promotion and development of the construction of indoor automatic archery lanes. Worldwide obtained its financing through franchised representatives in various states. These representatives were to obtain investors in their own areas for the construction of the archery lanes.

In October, 1962, Stevens and a codefendant, Moad, formed a partnership in Utah which was known as Worldwide Development Company of Utah (hereinafter referred to as Stevens-Moad partnership). This partnership became a franchised representative of Worldwide for the States of Utah, Idaho and Montana. Thereafter, Stevens contacted Vowell at the latter's residence in Murray, Utah, and solicited him to become an investor in and operator of an indoor automatic archery business. A number of conversations were had between them about this venture. As a result, Stevens wrote a letter of introduction to the president of Worldwide suggesting Vowell as an investor and Vowell traveled by car to Seattle, Washington, where the home office of Worldwide was located. There he met various officials of the company; was shown a device known as an Arro-Triever; and was told that it was owned by a subsidiary of Worldwide, when in fact it belonged to someone else and Worldwide had no right of ownership in it. This device was important in the construction of the automatic archery lanes. Stevens' partner, Moad, was in Seattle at the same time as Vowell and he made the arrangements for Vowell to meet the Worldwide officials. While in Seattle on this trip, Vowell was induced to sign an agreement designated "Agreement to Form a Corporation", the parties to which were Vowell, Worldwide and the Stevens-Moad partnership.

Under the terms of the agreement Vowell agreed to pay $20,000 for twenty-

five shares of no par value common stock in a corporation to be formed in Utah. The purposes of the corporation, as stated in the agreement, included the management, sale and lease of automatic archery lanes and related equipment. Worldwide agreed to put up the sum of $20,000 and in return it was to receive 50 shares of no par common stock. The Stevens-Moad partnership was also to receive 25 shares of stock to permit the construction of the archery lanes under its existing franchise agreement. At the time of the execution of this agreement, Vowell paid the sum of $1,500 to Worldwide upon the contract and gave his promissory note in the amount of $18,500, payable in 30 days, to cover the balance of his contractual obligation. Worldwide paid nothing at this time upon its obligation, nor did it at any time thereafter pay anything as it had agreed to do.

Vowell returned to Utah and had another series of conversations with Stevens and Moad about the venture. He paid the $18,500 due on the promissory note to Worldwide by check which was negotiated thus completing his $20,000 investment. Just prior to the time this payment was made, Moad issued a "Letter of Intent" to Vowell, thereby agreeing, in the name of the Stevens-Moad partnership, to grant Vowell a ⅟₃₂ (3⅛%) interest in the next seven operating corporations formed in the partnership franchise territory which was then comprised of the States of Arizona, Idaho, Utah, Montana and Wyoming.

The evidence is undisputed that Stevens and Moad had an arrangement with Worldwide whereby they would each receive 10 per cent of any sum invested by an investor, at their instance, in the archery lane program. Accordingly, each was paid the sum of $2,000 by Worldwide after Vowell's $18,500 payment was made. Vowell was not advised by anyone of such arrangement and knew nothing about these payments. Stevens and Moad had represented to Vowell that the entire amount of his investment would be used for the construction of the archery lanes in Utah. The evidence further discloses that Worldwide had received approximately $400,000 from investors such as Vowell and it had built no archery lanes in any locality.

The trial court made findings of fact covering, generally, the facts herein related and in addition found that: The defendants, Stevens, Moad, Choate and Reasoner, individually represented to Vowell that the $20,000 paid by him to Worldwide would be held in trust for the purpose of organizing a corporation as described in the "Agreement to Form a Corporation" and Worldwide would contribute $20,000, as agreed, all of which money would be used as operating capital by the corporation to be formed; the defendants, and each of them, knew that Vowell's $20,000 would not be held in trust, as agreed, and the defendants, Choate and Reasoner, knew that the financial condition of Worldwide would not allow it to retain the Vowell investment in trust or to match such funds; Vowell relied upon all of the representations made to him by the defendants; the defendants concealed certain critical facts concerning Worldwide from Vowell and made misrepresentations of other facts; the defendants, and each of them, used instrumentalities of interstate commerce in their plans and designs and in order to obtain Vowell's investment; the "Agreement to Form a Corporation", the letter of intent and the remittance constituted securities within the meaning of 15 U.S.C.A. § 78c(a) (10) and (11); and neither the securities nor the plan for financing Worldwide were registered with the Securities and Exchange Commission or on a national securities exchange.

■ We have carefully read and considered the entire record before us and have no difficulty in concluding that all of the crucial findings of fact made by the trial court are supported by the record. We are therefore bound by those findings on this appeal. Springer v. Townsend, 10 Cir., 336 F.2d 397.

■ Appellant's first argument in support of his contention that the court lacked jurisdiction of the subject matter of the lawsuit and over his person is that the allegations of the complaint are insufficient to bring the case within the purview of the statute and Rule X–10B–5. Little need be said about this belated attack upon the sufficiency of the complaint. The record before us shows that while the question was raised in appellant's answer, it was neither presented to nor ruled upon by the trial court. Rather, it appears that the case proceeded to trial upon the issues raised by the pleadings, without objection, and judgment was rendered on the evidence presented. In any event, this was not a common law fraud case and we think the allegations are sufficient under the "notice pleading" permitted by the Federal Rules of Civil Procedure. See Milliken v. Fidelity and Casualty Company of New York, 10 Cir., 338 F.2d 35, 39, 40.

■ It is next argued that the trial court did not have jurisdiction over the person of appellant because the suit was filed in the District of Utah and summons was served upon Stevens in Arizona. This argument is without merit. Under the broad provisions of 15 U.S.C.A. § 78aa,[1] the action may be brought or filed in one district and summons may be served upon the defendant in another district. Paul H. Aschkar & Company v. Curtis, 9 Cir., 327 F.2d 306.

■ It is also urged that the trial court did not have jurisdiction because the complaint failed to allege and the evidence did not establish that "any act or transaction constituting the violation occurred" within the District of Utah.

We do not agree. The evidence clearly shows that the initial contact with Vowell was made at his residence in Murray, Utah. Numerous conversations, all of which were integral parts of the transaction, took place in Utah and the letter of introduction to the officials of Worldwide was written, signed and mailed by Stevens in Utah. If that is not enough, the evidence also shows that the check from Vowell by which he made the payment due on the promissory note was executed by him after he returned to Utah and the so-called "Letter of Intent" was issued and delivered to Vowell in Utah. It would be strange indeed to conclude from these facts that no "act or transaction" occurred in the District of Utah.

■ The principal argument advanced by appellant is that the district court lacked jurisdiction over the subject matter of this lawsuit for the reason that the evidence wholly fails to establish any of the elements required to make out a case under 15 U.S.C.A. § 78j and Rule X–10B–5.[2] It is, of course, the law that the burden is upon the plaintiff to establish jurisdiction, and coincidentally make out a case under the statute and rule, and to do so he must prove: (1) Use of the mails or instrumentalities of interstate commerce; (2) the purchase or sale of a security; and (3) the use of a manipulative or deceptive device. Boone v. Baugh, 8 Cir., 308 F.2d 711. We shall take these elements up in the order presented.

■■ It will be observed that neither the statute nor the rule requires that the manipulative or deceptive device or contrivance be a part of or actually transmitted in the mails or instrumentality of

1. The statute in pertinent part reads as follows:

"* * * Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *"

2. The text of the statute and rule are set forth in Kohler v. Kohler Co., 7 Cir., 319 F.2d 634, 636, footnotes 1 and 2.

interstate commerce. All that is required is that such a device or contrivance be used or employed in connection with the use of the instruments of interstate commerce or the mails. Ellis v. Carter, 9 Cir., 291 F.2d 270; Matheson v. Armbrust, 9 Cir., 284 F.2d 670, cert. denied, 365 U.S. 870, 81 S.Ct. 904, 5 L.Ed.2d 860; Errion v. Connell, 9 Cir., 236 F.2d 447; Fratt v. Robinson, 9 Cir., 203 F.2d 627, 37 A.L.R.2d 636; Boone v. Baugh, supra. We have no hesitancy in holding that both the mails and instrumentalities of interstate commerce were used in this case. As we have seen, the mails were used by appellant to introduce Vowell to the officials of Worldwide. Vowell then traveled in interstate commerce from Utah to Washington and back and thereafter negotiated his check for the final payment in connection with his investment which entered the stream of interstate commerce in going from Utah to Washington and returned through interstate banking channels. In addition, the 10 per cent commission was paid to Stevens and Moad and such payments originated at Worldwide's offices in Seattle and terminated with those individuals in Utah. To say that the instrumentalities of interstate commerce and the mails were not used in the face of these facts would be to blind oneself to reality.

■ The term "purchase" as used in the statute includes "any contract to buy, purchase, or otherwise acquire", 15 U.S.C.A. § 78c(a) (13), and the term "sale" includes "any contract to sell or otherwise dispose of." 15 U.S.C.A. § 78c(a) (14). A "security" is defined as " * * * any note, stock, * * * certificate of interest or participation in any profit-sharing agreement * * * preorganization certificate or subscription, * * * investment contract, * * or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; * * *." 15 U.S.C.A. § 78c (a) (10). Appellant's assertion to the contrary notwithstanding, we think the evidence in this case clearly shows such a sale or purchase of such a security. The "Agreement to Form a Corporation", whether it be considered an investment contract, a contract for the distribution of shares of corporate stock or a joint venture agreement, expressly provides for the distribution of shares of stock in a corporation to be thereafter formed. As such it is most certainly a contract to buy, purchase or otherwise acquire those shares of stock. And, it most assuredly comes within the definition of security as a preorganization certificate or subscription and an investment contract as well as being a certificate of interest or participation in or right to subscribe to or purchase stock.

■ The third requirement is that there must be the use of a manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission might prescribe. Rule X–10B–5 provides that under the statute it shall be unlawful to: Employ any device, scheme or artifice to defraud; make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. The validity of this rule has been upheld as a lawful exercise of the Commission's power. Hooper v. Mountain States Securities Corporation, 5 Cir., 282 F.2d 195, cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. It is not necessary to allege or prove common law fraud to make out a case under the statute and rule. It is only necessary to prove one of the prohibited actions such as the material misstatement of fact or the omission to state a material fact.[3] Royal Air Properties Inc. v.

---

3. It is for this reason that Rule 9(b), F.R.Civ.P., 28 U.S.C.A., requiring the pleading of fraud with particularity, is not applicable in this case, even assuming that the question was properly raised below.

Smith, 9 Cir., 312 F.2d 210; Ellis v. Carter, supra; Matheson v. Armbrust, supra. Beyond question, the record in this case establishes the making of untrue statements and the omission to state material facts. Not only did Stevens and Moad misrepresent that the entire $20,000 paid by Vowell would be used as operating capital for the corporation but they also omitted to state that they were to get a 10 per cent commission on the sums invested. And, of course, the record clearly shows that Worldwide had built no archery lanes in any locality even though investments had been made in the total sum of $400,000.

We conclude that there is abundant evidence to establish each and every element required under the statute and rule. The trial court therefore had jurisdiction over the subject matter.

The final point raised by appellant relates to alleged erroneous rulings by the trial court in admitting and excluding evidence. In this connection, the record shows that the minute book of Worldwide was admitted into evidence over appellant's objection on the ground that it was hearsay as to him. The minute book was offered for the purpose of establishing that the Arro-Triever device had been assigned by Worldwide to a third party. The record also shows that the court sustained appellee's objection to testimony by Stevens that Vowell owned an interest in a corporation which, during the pendency of this lawsuit, employed Stevens and gave him a franchise in Arizona. It is asserted that this testimony was material because it affected the credibility of Vowell, who claimed that Stevens had defrauded him, and it tended to show that Vowell was using the knowledge gained on the trip to Washington thereby indicating that he (Vowell) had not relied upon the representations made by Stevens. The record further reveals that Stevens testified on cross-examination, over objections by his counsel, that at no time did he or his part-ner, Moad, inform appellee of their commission arrangement with Worldwide. It is asserted that such testimony was immaterial.

It must be borne in mind here that Stevens was only one of several defendants in this case and therefore evidence inadmissible as to him might well be admissible as to other defendants. It must also be borne in mind that this was a non-jury case and in such a case " * * * questions raised relative to the admission or exclusion of evidence * * * become relatively unimportant, the rules of evidence relating to admission and exclusion being intended primarily for the purpose of withdrawing from the jury matter which might improperly sway the verdict, and not for the trial judge, who is presumed to act only upon proper evidence." MacDonnell v. Capital Co., 9 Cir., 130 F.2d 311, 318, cert. denied, MacDonnell v. Bank of America, 317 U.S. 692, 63 S.Ct. 324, 87 L.Ed. 554; United States v. Compania Cubana De Aviacion, S. A., 5 Cir., 224 F.2d 811. There is indeed a presumption on appeal in non-jury cases that the trial court disregarded incompetent evidence and considered only competent evidence. Seber v. Thomas, 10 Cir., 108 F.2d 856; Wells v. J. C. Penney Company, 9 Cir., 250 F.2d 221; Taylor v. Taylor, 8 Cir., 211 F.2d 794. Assuming that the minute book was incompetent as to Stevens, we must presume that the trial court did not consider it in reaching a decision as to him since there is nothing in the record to the contrary and there is ample evidence to support the judgment without such evidence. As to the testimony concerning the employment of Stevens, the substance of it was before the court and there is no indication that it would have changed the court's conclusions. The testimony as to the commission was obviously relevant, in fact crucial evidence and was properly admitted. We find no error in the admission and exclusion of evidence.

Affirmed.