Russell P. DRAKE for and on behalf of himself and on behalf of all stockholders and former stockholders of Thor Power Tool Company, similiarly situated, Plaintiff,

v.

THOR POWER TOOL COMPANY, a Delaware Corporation, and Peat, Marwick, Mitchell & Co., a Partnership, Defendants.

No. 65 C 1133.

United States District Court
N. D. Illinois, E. D.
Sept. 15, 1967.

A. Bradley Eben, Chicago, Ill., for plaintiff.

Patrick W. O'Brien, Edmund A. Stephan, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for Thor Power Tool Co.

Frank F. Fowle, Pope, Ballard, Uriell, Kennedy, Shepard & Fowle, Chicago, Ill., for Peat, Marwick, Mitchell & Co.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

Plaintiff Drake complains that he purchased Thor stock through the facilities of the New York Stock Exchange at a time when the assets and profits of Defendant Thor were being fictitiously reported in its financial statements and thereupon promulgated to the public as well as to Thor's stockholders, and that when the true financial condition became known the price of Thor shares as then traded on the New York and Midwest Stock Exchanges dropped precipitously. Thor is charged with falsification of its inventory and sales figures and issuing financial statements reflecting such false figures. Peat, Marwick, Mitchell & Co., Thor's independent accounting firm, is charged with applying inappropriate accounting procedures with respect to the Thor audits and uttering untrue certifications of Thor's false financial statements. The cause is a class action on behalf of certain persons similar to plaintiff who had bought and subsequently sold their shares. In another action, Greenwald et al. v. Lind et al., 65 C 1928, a complaint was filed by persons who are still stockholders as a class action. The two suits have been consolidated.

A Rule 10b–5 claim is alleged as well as claims under § 18 and § 14 of the Securities Exchange Act of 1934, and a common law claim against Peat, Marwick.

The Defendant, Peat, Marwick, has filed a motion to dismiss the action, but the points raised in its motion had been ruled upon by Judge Hoffman in *Greenwald* and are controlling. However, Defendant also urges that this Court's recent decision in Jordan Building Corp. v. Doyle, O'Connor & Co., 282 F.Supp. 87, N.D.Ill., July 18, 1967, is controlling with regard to the right to sue under Section 10b–5. This memorandum is devoted to an elaboration of the holding in *Jordan* as the present case is found to be distinguishable.

In *Jordan*, this Court had granted the defendants' motion to dismiss plaintiff's complaint, which alleged a claim under 10b–5 that plaintiff had purchased debentures which were an original issue in a private sale and relied upon the representations in a prospectus of the defendant and representations of underwriters that the defendant company was in a sound financial condition when in fact the company was on the verge of economic collapse. The holding was based upon a careful consideration of the current state of the law regarding 10(b)–5.

Section 10(b) of the 1934 Act, 15 U.S.C. § 78j, 48 Stat. 891, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 C.F.R. 240.10b–5, as promulgated by the Securities and Exchange Commission, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange—

(a) To employ any device, scheme or artifice to defraud.

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to

make the statement made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Whether Congress intended that an implied private civil remedy exists with reference to 10(b), 15 U.S.C. § 78j, and Rule 10b–5 is questionable. Ruder, Civil Liability Under Rule 10(b)–5: Judicial Revision of Legislative Intent, 57 Nw.U.L.Rev. 627 (1963). Nevertheless, beginning with Judge Kirkpatrick's opinion in Kardon v. National Gypsum Co., 73 F.Supp. 798 (E.D.Pa. 1947), the courts have consistently found that Section 10(b) and Rule 10b–5 imply a remedy for private relief. The issue is no longer raised in litigation. Klein, The Extension of A Private Remedy To Defrauded Securities Investors Under SEC Rule 10B–5, 20 U. of Miami L.Rev. 81 (1965), and cases cited therein. Jennings and Marsh, Securities Regulation: Cases and Materials, at 777 (1963); Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9th Cir. 1953); Robinson v. Difford, 92 F.Supp. 145 (E.D.Pa.1950); Speed v. Transamerica Corp. (D.C.Del.1951) 99 F.Supp. 808; Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967); Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir. 1967). This civil remedy has been recognized in the Seventh Circuit as well. James Blackstone Memorial Library Ass'n v. Gulf, M. & O. R. R., 264 F.2d 445 (7th Cir. 1959) cert. den. 361 U.S. 815, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959); Dasho et al. v. The Susquehanna Corp. et al., 380 F.2d 262 (7th Cir., June 26, 1967); Kohler v. Kohler Co., 280 F.Supp. 808 (E.D.Wis.1962); Northern Trust Co. v. Essaness Theater Corp., 103 F.Supp. 954 (N.D.Ill.1952).

The courts have used Rule 10b–5 to expand the range of liability in the realm of securities transactions, thereby creating a Federal common law which is in a state of flux. King, Recent Developments Concerning the 1933 Securities Act, and 1934 Securities Exchange Act, 20 U. of Miami L.Rev. 919 (1966); Note, 52 Mich.L.Rev. 893. A recognized authority on the law of securites has expressed his reaction to this development:

* * * What has happened to Rule 10b–5, the great Freeman rule, always reminds me of a cartoon of the time showing Mussolini dictating to his secretary, and the caption was, "Miss Baccigalupi, take a law."

Whenever I try to explain to a foreign lawyer, as I have on a number of occasions, how we have developed in this country a scheme for grappling with the problems of insider preferences and so on, more and more I become increasingly ashamed, and that is the only word I can use at this sort of jurisprudence. It is awfully hard, really, to explain with a straight face, how it is that this came about in this great country of ours. It is a development that, needless to say, I applaud. It was long overdue. But do we have to go on indefinitely basing this whole revolutionary change on a section of the Exchange Act that says it shall be unlawful for any person in the purchase or sale of any security to engage in any act or practice that the S.E.C. prescribes as manipulative or deceptive? How big a house of cards can we continue to build on that? This is backdoor jurisprudence with a vengeance. Loss, History of S.E.C. Legislative Programs And Suggestions for A Code, 22 Bus.Lawyer 795, 796 (1967).

The use of 10b–5, as encouraged by the Securities and Exchange Commission, has lead to the emergence of a Federal law of corporations. Matter of Cady Roberts & Co., CCH Fed.Sec.L. Rep. p. 76803 (1961); Ruder, Pitfalls In the Development of A Federal Law of

Corporations By Implication Through Rule 10b–5, 59 Nw.U.L.Rev. 185 (1964–65).

Though the investor and the general public are entitled to legal protection, the development of law in this area requires a consideration of a myriad of complex factors involving corporate and business factors, as well as possible effects upon the national economy. The courts, taking a case by case approach, are not equipped to deal with these problems. *Ruder,* supra. The law is in a state of confusion and needs codification. Somers, Rule 10b–5: Notes for Legislation, 17 West.Res.L.Rev. 1029 (1966).

One writer, in pointing up the confused and chaotic nature of securities law, refers to an example similar to the fact situation in *Jordan,* though involving a public offering and sale of a registered security by a public utilities holding company. The complaint, in alleging misrepresentation of a material fact regarding the debentures, alleges violations of § 11, § 12(2), § 17(a) of the Securities Act and § 9(e), § 10(b) and Rule 10b–5, § 15(c) (1) and Rule 15cl–2, and § 18(a) of the Securities Exchange Act. The sections cited reveal differences not only in their substantive content, but also in the allocation among the parties of the burden of proof with respect to substantive matters. The sections differ regarding materiality, reliance and causation, exercise of care, measure of damages, jurisdiction, and costs and attorneys' fees. The writer then concludes:

The result of the foregoing discrepancies is, of course, that the plaintiff will carefully pick and choose both the substantive provision and the pro-

cedural avenue best suited to him. Consequently specific safeguards relating to burden of proof, defenses, statutes of limitations and other conditions to recovery which were thought appropriate by the Congress when it enacted the specific civil liability provisions are entirely avoided. The result is that the issues, the underwriter, the broker-dealer and others have been denied the protection of the safeguards which many people thought existed and have been placed with increasing frequency in the position of having to defend actions, which, only a short time ago, were not even contemplated by persons expert in the securities law field.

It is difficult for me to believe that the draftsmen of the federal securities laws would have taken the trouble to prescribe the limitations and defenses applicable to actions brought under the various sections which specifically provide for civil liabilities if, at the same time, they had contemplated that similar actions without such limitations and defenses could be brought under various other sections which specifically provide for civil liabilities. In any event, I feel that it would be in the public interest to strive for some semblance of order and consistency in this area. In my view 10(b)5 should be a primary target. Henkel, Codification-Civil Liability Under The Federal Securities Laws, 22 Bus.Lawyer 866, 871 (1967).[1]

The contradiction and confusion is partly attributable to statutory wording, particularly as to § 10(b) and Rule 10b–5, but the courts must bear some of the blame as civil liability has expanded as a result of loose wording of judicial opin-

---

1. Professor Jennings, in commenting on this hypothetical and the writer's observations states: "On the other hand, if the action is filed in the Second Circuit, and if Montague v. Electronic Corporation of America, 76 F.Supp. 933 (S.D.1948) is followed, the plaintiff cannot bypass Section 11 in favor of Rule 10b–5. Accordingly, on a motion to dis-

miss, the defendant would appear to have a very good chance of preventing the plaintiff from using Rule 10b–5 in addition to, or as a substitute for, a Section 11 liability and of getting a dismissal of the count based on Rule 10b–5." Jennings, Discussion, 22 Bus. Lawyer 878 (1967).

ions. A tighter differentiation is needed as to the distinction between purchase and sale. A reconsideration of some of the decisions is needed.

■ Following the decision in *Kardon*, supra, the question arose as to whether 10b–5 applied only to sellers, or to both sellers and buyers. The 1933 Act was drafted for the protection of buyers while the 1934 Act extended protection to sellers. To permit the buyer to sue under 10b–5 would nullify the effect of a wall of restrictions imposed upon him under Sections 10 and 11 of the 1933 Act, thus nullifying the intent of Congress.

In Montague v. Electric Corporation, 76 F.Supp. 933 (S.D.N.Y.1948), the plaintiffs, former and present stockholders of defendant corporation, brought action for damages for alleged untrue statements of material facts and omissions of material facts in a Registration Statement filed with the Securities and Exchange Commission in connection with the public offering of shares of preferred and common stock. The defendants were the corporation, the principal officers and directors, the accountant who certified the financial statements, and seven underwriters. The plaintiffs' original complaint alleged that both Section 11 of the Securities Act and Section 10(b) of the Exchange Act had been violated. When the defendants moved to dismiss or, in the alternative, to require the plaintiffs to furnish an undertaking for costs pursuant to Section 11, the plaintiffs amended their complaint to allege a single cause of action under Section 10(b). The Court noted that:

The amended complaints plainly state good claims under Section 11 of the Securities Act of 1933. The plaintiffs are persons who acquired electronic securities covered by the Registration Statement; the defendants are the persons specified in Section 11 as the persons who may be sued; the claims are based solely on untrue statements and omissions in the Reg-

istration Statement, and the damages are those specified in the section. The actions are therefore maintainable under Section 11 despite the allegations in both amended complaints that the actions are under Section 10(b) of the 1934 Act and Rule X–10b–5. * * * 76 F.Supp. 933, 935.

The Court then dismissed the complaint:

The plaintiffs contend, however, that the actions may nevertheless be maintained under Section 10(b) of the 1934 Act and Rule X–10B–5. The purpose of plaintiff in seeking to bring the actions under that section and rule is obviously to avoid the provision of Section 11(e) of the 1933 Act providing that in any suit under that section "the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attornies fees." I do not think that the actions can be maintained under that section and rule.

\* \* \* \* \* \*

Section 10(b) of the 1934 Act and Rule X–10B–5 were clearly not intended to supplant Section 11 of the 1933 Act. Section 11 of the 1933 Act is entitled "Civil liabilities on account of false registration statement". It relates to a limited special subject, and gives a new remedy to a purchaser of a security where the Registration Statement contains untrue statements or omissions of material facts. Section 10(b) of the 1934 Act is, on the other hand, in general language and prohibits the use in connection with any purchase or sale of a security of "any manipulative device or contrivance". These words have been given a broad interpretation \* \* \* but they should not be construed so broadly as to make an action which is maintainable under Section 11 of the 1933 Act also maintainable under Section 10(b) of the 1934 Act. The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for specific cases and where there is also a general provision which is comprehensive

enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former. \* \* \*

The application of this rule of construction permits both Section 11 of the 1933 Act and Section 10(b) of the 1934 Act to stand together in the same statutory scheme, Section 11 being confined to the particular situations specified in that section, and Section 10(b) being applicable to other situations. \* \* \* 76 F.Supp. 935.

Clearly, the holding of *Montague* was that a purchaser may not invoke 10b–5 where he has a specific remedy under the provisions of the 1933 Act.

During the same year in which *Montague* was decided, Judge Kirkpatrick, who had found an implied right for the seller to sue in *Kardon*, supra, denied the existence of a corresponding right in the buyer in Rosenberg v. Globe Aircraft Corp., 80 F.Supp. 123 (E.D.Pa.1948). *Rosenberg* was a suit by plaintiffs who had incurred losses in acquiring defendant corporation's stock shortly after public distribution as resulting from false statements in the registration statement and prospectus. The complaint alleged violations under Rule 10b–5. Judge Kirkpatrick, in dismissing the action, held:

It is obvious that the cause of action arises exclusively from conduct and acts which, whether or not they violate the Securities Exchange Act of 1934 \* \* \*, unquestionably constitute violations of the Securities Act of 1933 \* \* \*. In this aspect the complaint states a claim upon which relief can be granted and the fact that the pleader referred to another statute, the Act of 1934, is immaterial. \* \* \*

He then found that plaintiffs may not evade the venue provisions of Sections 11 and 12 of the 1933 Act.

A year later, the Court, in Osborne v. Mallory, 86 F.Supp. 869 (S.D.N.Y. 1949) permitted a plaintiff purchaser to sue to recover under 10b–5 from defendant sellers who had allegedly sold stocks in violation of the 1933 and 1934 Acts without citing *Montague* or *Rosenberg*. Though a cause of action was alleged under Sections 11 and 12 of the 1933 Act, there was also an allegation for recovery under Section 15 of the 1934 Act. The Kardon case, involving an action by a defrauded seller, was cited. The Court in *Osborne* apparently did not consider the issues raised in *Montague* and *Rosenberg*.

The most important case in this period was the Second Circuit's decision in Fischman v. Raytheon Mfg. Co., 188 F.2d 783. (2d Cir. 1951), which reversed a lower court decision based on *Rosenberg* and *Montague*. In *Fischman* preferred and common stockholders sued to recover for injury sustained because of certain false and misleading statements contained in a registration statement covering defendant's preferred stock. The common stockholders had no cause of action under Section 11 of the Securities Act, since a suit pursuant to that section may be maintained only by one who purchases securities that are the direct subject of a prospectus and registration statement. The trial judge had reasoned that Congress did not intend to afford the common shareholders a remedy under the 1934 Act for the very conduct not actionable under the Securities Act of 1933. In reversing the trial court Judge Frank found that in exchange for his freedom from the restrictions imposed by the Securities Act the purchaser suing under the Exchange Act had the burden of proving fraud, a requirement not present in the 1933 Act. Thus, the two acts did not provide concurrent remedies for identical wrongful conduct. Clearly Judge Frank conceived two separate remedies for two distinct types of wrongdoing. Klein, The Extension of A Private Remedy To Defrauded Securities Investors Under SEC Rule 10B–5, 20 U. of Miami L.Rev. 81, 94–6 (1965).

The Ninth Circuit, in Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961) found that a buyer of fraudulently sold securities

may maintain an action under 10b–5. The Court admitted that, read together, the 1934 and 1933 Acts present certain inescapable anomalies, no matter which of several constructions are placed on Section 10(b) and noted that four alternatives suggest themselves: (1) Permitting no civil remedy to either buyer or seller, but under such a construction defrauded sellers are given no remedy under either Act which appears to be inconsistent with the all embracing scope of the legislation and requires that an unexplained distinction be drawn between buyers and sellers; (2) permitting sellers but not buyers to sue under the rule, but this seems inconsistent with the fact that Section 10(b) and Rule 10b–5 are expressly applicable to buyers as well as sellers, and there seems to be no good reason why Congress would want to restrict buyers to the limited remedies in the 1933 Act while giving sellers an unrestricted remedy; (3) permitting buyers as well as sellers to sue under the 1934 Act, but to make buyers' actions thereon subject to the same restrictions as provided for them in the 1933 Act, which is the same as giving him no right under the 1933 Act, leaving an unexplained distinction between buyers and sellers; and (4) permitting buyers as well as sellers to sue under Section 10(b) without any distinction whatever, free of the restrictions imposed by the 1933 Act, though thereby nullifying the procedural restrictions of the 1933 Act. The Court chose the last alternative.

A casebook which presents these cases observes:

> The *Fischman* and *Ellis* cases both involved situations where the plaintiff buyers could have maintained an action under Section 12(2) of the Securities Act of 1933. (Judge Frank overlooks this section entirely when he says that in the absence of an action under Rule 10b–5 the plaintiffs "would have no redress whatever under the statute.") However, an action under that section would be subject to a defense of due care and would also be subject to a more stringent venue provision and to a shorter statute of limitations. If you assume as Judge Frank does, that proof of an intentional misstatement is required under Rule 10b–5, then it can be plausibly argued that if the plaintiff wants to assume this additional burden, he should reasonably be freed of the restrictions. On the other hand, if you assume, as does the *Ellis* case, that even due care is no defense to an action under Rule 10b–5, then the recognition of a private right of action in favor of buyers under the Rule will have completely abolished Section 12 (2), since the former would always be more favorable to the plaintiff on all counts.

Neither the *Fischman* nor the *Ellis* cases involved an action under Rule 10b–5 by a purchaser of registered securities who might have sued under Section 11 of the 1933 Act. In *Fischman* on appeal the preferred stockholders who had purchased registered securities abandoned their cause of action under the Rule and were "content to rest their claim on \* \* \* Section 11 of the 1933 Act." Nevertheless, Judge Frank, in *dictum* asserts that a buyer can sue under the Rule *"whether or not* he could maintain a suit under § 11 of the 1933 Act". This result he justified on the basis of his theory that an action under the Rule requires proof of "fraud".

On the other hand, the only two cases actually involving suits under Rule 10b–5 by purchasers of registered securities both held that no such suit can be maintained [The *Montague* case], or that if it can it is subject to all of the defenses and qualifications of a suit under Section 11 [the *Rosenberg* case] (which is the same thing as saying it can't be maintained at all).

The problem of reconciling a private right of action in favor of buyers under the Rule with Section 11 is essentially the same problem as that of reconciling it with Section 12(2).

However, in the former case the incongruity is much more glaring because of the pages of restrictions which Congress surrounded an action under Section 11, all of which would be "causally nullified" by the recognition of an absolute liability (per *Ellis*) based upon Rule 10b–5. Jennings and Marsh, Securities Regulation: Cases and Materials 791–2 (1963).

In considering the framework of these cases, this Court had, accordingly, dismissed the plaintiff buyers' complaint in *Jordan*. The complaint in that case stated a cause of action which was governed by Sections 11 and 12 of the 1933 Act and therefore was governed by the holdings in *Rosenberg* and *Montague*.

This Court has chosen to reject the approach taken in *Ellis*, which results in a radical distortion of congressional intent. The Federal securities legislation was designed to protect the investor, maintain integrity and honesty in the securities market, and curb "unnecessary, unwise, and destructive speculation." H. R.Rep.No.1383, 73rd Cong., 2d Sess. 2 (1934). Where Congress expressly created civil liabilities to implement these policies, two aims predominated: to compensate the innocent investor who had lost money on falsely valued securities and to deter the proscribed practices by effective civil sanctions which complemented injunctive and criminal remedies. But Congress was not unmindful of the necessity to avoid as far as possible any undue interference with honest business activity in the securities market.

■ To effectuate the intent of Congress, Rule 10b–5 must be interpreted within the context of congressional policy. A particular source of such policy is Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2), which contains language similar to Rule 10b–5, while creating a civil right of action only in favor of purchasers with carefully delineated substantive and procedural elements. Rule 10b–5, however, fails to specify the substantive and procedural elements of an action thereunder. To fol-

low the aproach suggested by *Ellis* would nullify the effect of Section 12 as well as Section 11 and thereby thwart the intent of Congress. An effort must be made to keep the two statutes logically consistent. Comment, Negligent Misrepresentation Under Rule 10b–5, 32 U. of Chi.L. Rev. 834 (1965); Trussel v. United Underwriters Limited, 228 F.Supp. 757 (D. Colo.1964); Weber v. C. M. P. Corp., 242 F.Supp. 321 (S.D.N.Y.1965); O'Neill v. Maytag, 339 F.2d 764 (10th Cir. 1965).

The decision in A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967), which was recently handed down by Judge Kaufman, is distinguishable from *Jordan*. That case involved a broker who had purchased securities for the defendant's account and the defendant refused to pay for them, causing the broker to incur a loss. Though Judge Kaufman refers at one point to the plaintiff as a purchaser, Ft. Nt. 3 at 397, it had not purchased the securities from the defendant nor the defendant's agent, as was the situation in *Jordan*. He could not have a cause of action under the 1933 Act. The holding was that Section 10(b) and Rule 10b–5 are not limited to the protection of investors. The case fell, rather, within the trading provisions of the 1934 Act and did not involve securities distribution. This decision does, however, support this Court's holding in the present case.

The case of Dasho et al. v. The Susquehanna Corporation, 380 F.2d 262 (7th Cir. 1967) is not in point. The Court of Appeals did not decide, nor did it find it necessary to decide, whether a buyer has an implied right of action under Rule 10b–5. In *Dasho*, the plaintiffs were shareholders suing derivatively on behalf of the Susquehanna Corporation alleging violations of Rule 10b–5 and Section 17(a) of the Securities Act of 1933 in regard to a statutory merger involving an exchange of stock with another corporation. In determining whether the complaint stated any claim for relief under Rule 10b–5 or Section 17(a), the Court of Appeals for the Seventh Circuit was primarily faced with the issue of

whether there was a purchase or sale by Susquehanna. Both the opinion of Judge Schnackenberg for the Court and of Judge Fairchild, concurred in by Judge Cummings, were devoted to historical and analytical discussion of this issue, and neither opinion purported to analyze or discuss the issues involved in *Jordan*. In holding that the exchange of securities involved purchases and sales, the Court clearly indicated that the particular transactions in question could be analyzed as either sales or purchases by Susquehanna. Unlike *Jordan*, it is unlikely that the plaintiff in *Dasho* could have had a cause of action under the 1933 Act. The fact situation involved trading and insider dealings of a corporation with elements of both purchase and sale. Therefore, any implication which may be drawn from this decision as to the right of a purchaser to sue is not relevant to this Court's decision in *Jordan*. Similarly, any implication which may be derived from Vine v. Beneficial Finance Company, 374 F.2d 627 (2d Cir. 1967), which also involved a merger, is not relevant. But these decisions, in indicating the residual nature of Rule 10b–5, do support this Court's holding in the present case.

The present case before the Court is distinguishable from *Jordan*. In that case, the plaintiffs complained that they had purchased debentures as occasioned by means of an untrue prospectus, and sued the issuer of these securities from whom they had purchased them, and the underwriter for damages or rescission of the purchases of the debentures. The complaint alleged that the plaintiffs were victims of an alleged distribution fraud and there was privity between the plaintiffs and the defendants. Clearly, the complaint alleged a cause of action maintainable under Section 12 of the 1933 Act. The complaint therefore could not involve the 1934 Act and Rule 10b–5 which provides a remedy for the rights of buyers.

 The 1934 Act applies to securities trading as contrasted to securities distribution, and, in this context, the anti-fraud provisions, including Section 10(b) and Rule 10b–5, applies equally to fraudulent sellers and buyers. The fraud alleged in *Jordan*, however, involved the distribution rather than trading aspects of the statutory pattern. Therefore, the plaintiffs in *Jordan* could not seek relief under 10b–5. Rosenberg v. Globe Aircraft, 80 F.Supp. 123 (E.D.Pa.1948); Montague v. Electronic Corporation, 76 F.Supp. 933 (S.D.N.Y.1948).

In the present case, however, the allegations refer to both the buying and selling of securities. Clearly, there is trading. The plaintiffs could not obtain relief under any of the specific private remedies under Section 12 of the 1933 Act, since no privity is alleged between the class of plaintiffs and the defendants as required by the provisions of that Act.

 Neither congressional intent nor the statutory scheme will be distorted by granting the plaintiffs a remedy under Rule 10b–5. The Rule functions as a reservoir in an interstate economy with transactions occurring all over the country in situations where there simply would not be a remedy without it. Rule 10b–5 is particularly applicable to this case. Jennings, Discussion, 22 Bus.Lawyer 866 (1967); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).

The defendant has argued that because the complaint states a cause of action which is assertable under Section 18 of the 1934 Act, plaintiff is precluded from asserting Section 10(b) and Rule 10b–5. This contention is disposed of by Judge Lord's decision in Miller v. Bargain City, U. S. A., 229 F.Supp. 33, 37 (E.D.Penn. 1964):

> * * * [I]t is true that the specific conduct alleged in the complaint would appear to amount to the type of fraud which is covered by Section 18. However, it is also true that the complaint alleges that defendants employed "a device, scheme, or artifice to defraud" and that they engaged in an "act, practice or course of business" which operated as a fraud or deceit. These alle-

gations are certainly broad enough to permit evidence of conduct violative of Rule 10b–5. Discovery may reveal that plaintiffs have evidence of conduct that transcends the specific conduct embraced in Section 18. If so, defendants' first argument will be moot. If not, there will be time to decide the issue, not now.

Likewise, in the present case, though the complaint alleges conduct which would be covered by Section 18, the complaint also alleges that defendants' officers "devised a plan, scheme and artifice to artificially increase the assets net worth and the net profit of Thor for the years 1961, 1962, 1963 and 1964." The complaint also alleges that Defendant Peat, Marwick "failed to exercise the proper or appropriate auditing procedures," which implies an allegation of negligence which may also transcend the privity requirement of Section 18.

■ The plaintiffs need not assert privity under Rule 10b–5. Privity as an element of Rule 10b–5 has been rejected in most recent decisions. Cooper v. North Jersey Trust Company, 226 F. Supp. 972, 978 (S.D.N.Y.1964); Texas Continental Life Insurance Co. v. Dunne, 307 F.2d 242 (6th Cir. 1962); Pettit v. American Stock Exchange, 217 F.Supp. 21 (S.D.N.Y.1963); Cochran v. Channing Corp., 211 F.Supp. 239 (S.D.N.Y. 1962); Bucholtz v. Renard, 188 F.Supp. 33, 37–38 (E.D.Pa.1964); Comment, Civil Liability Under Section 10B and Rule 10B–5: A Suggestion for Replacing the Doctrine of Privity, 74 Yale L.J. 658 (1965).

Section 10(b) and Rule 10b–5 are aimed at prohibiting fraudulent schemes in trading in securities and were designed in protecting both investors and the public interest. A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967). Within this context, notions of privity cannot apply. Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir.

1960), cert. den. 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

Heit v. Weitzen, 260 F.Supp. 598 (S.D.N.Y.1966) and Howard v. Levine, 262 F.Supp. 643 (S.D.N.Y.1965) are not applicable. In these cases, the complaint was dismissed because plaintiff's allegations failed to state a claim for fraud "in connection with the purchase or sale of any security." The complaint alleged that the defendant's financial report which was filed with the Securities and Exchange Commission contained false and misleading statements of material facts in overstating assets and income as based in large part upon earnings, income and assets resulting from substantial overcharges to the United States Government in connection with contracts between the defendant and the Government. The intended purpose of the misstatements was to defraud the Government rather than the investing public. But, in the present case, the alleged misstatements were intended for public information and to induce the public to buy securities. The defendant, in certifying financial statements, directed its activities toward investors. Fischer et al. v. Kletz et al., 266 F.Supp. 180 (S.D.N.Y. 1967). The decision in these cases is questionable. The purpose of the financial statements is to inform the man on the street and the underlying policy of the Securities and Exchange Acts and of Rule 10b–5 is to assure that he can have truthful information in buying securities, regardless of the intended victim of the fraud. Moreover, the defendants have set themselves up to be independent certified public auditors. As such, they have assumed a peculiar relationship with the investing public. As accountants, the defendant clearly cannot be immunized from suit. H. L. Green Company v. Lewie F. Childree, 185 F.Supp. 95 (S.D.N.Y.1960).

■ Defendant Peat, Marwick, in independently auditing Thor's financial statement, remains liable regardless of whether it had benefited from the sup-

posedly inflated market price. The position of an independent auditor is different from that of other corporate insiders. Judge Bonsal's holding in SEC v. Texas Gulf Sulphur Co., 258 F.Supp. 262 (S.D.N.Y.1966) does not apply to this situation. The issuance of a financial statement by an independent auditing firm is not the same as the issuing of a press release.

In Fischer et al. v. Kletz et al., 266 F.Supp. 180 (S.D.N.Y.1967), which also involved the Defendant Peat, Marwick in an allegation that it failed to disclose that financial statements which it certified contained false and misleading figures and that interim statements were false and misleading. Judge Tyler refused to dismiss a common law fraud allegation and also found the defendant liable under Rule 10b–5. The Court clearly placed no weight on the absence of any allegation of gain.

The complaint asserts a cause of action which is independent of the provisions of Sections 11 and 12 of the 1933 Act. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Trussel v. United Underwriters Limited, 228 F. Supp. 757 (D.Colo.1964); Weber v. C. M. P. Corp., 242 F.Supp. 321 (S.D.N.Y. 1965). O'Neill v. Maytag, 339 F.2d 764 (2nd Cir. 1964). The allegations may be sustained as either an intentional misrepresentation or as a negligent misrepresentation. There was reliance upon the alleged misstatements. Note, 63 Mich.L. Rev. 1070 (1965); Comment, supra, 74 Yale L.J. 658 (1965); Comment, Negligent Misrepresentation Under Rule 10b– 5, 32 U. of Chi.L.Rev.; Thiele v. Shields, 131 F.Supp. 416 (S.D.N.Y.1955); Baron v. Shields, 131 F.Supp. 370 (S.D.N.Y. 1954); Greenwich Sav. Bank v. Shields, 131 F.Supp. 368 (S.D.N.Y.1954); Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); List v. Fashion Park, Inc., 340 F. 2d 457 (2d Cir. 1965), cert. den. 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965).

The Court denies Defendant's Motion to Dismiss.