James L. BOONE et al., Appellants,

v.

S. R. BAUGH and W. P. Crawford, Appellees.

No. 16984.

United States Court of Appeals Eighth Circuit.

Oct. 16, 1962.

Rehearing Denied Nov. 15, 1962.

Leffel Gentry, Little Rock, Ark., for appellants.

E. W. Brockman, Jr., Pine Bluff, Ark., for appellees and filed brief with E. W. Brockman, Pine Bluff, Ark.

Before VOGEL and VAN OOSTER-HOUT, Circuit Judges, and VAN PELT, District Judge.

VAN OOSTERHOUT, Circuit Judge.

The issue presented by this appeal is whether the trial court erred in dismissing the complaints in the three consolidated cases before us for lack of jurisdiction. The complaints in the three cases differ in no material respect to the extent that they relate to the jurisdictional issue. Jurisdiction is predicated on § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78j(b), as implemented by Rule X–10B–5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10B–5. It is conceded that no diversity of citizenship jurisdiction exists.

A statement of the facts involved in the cases before us is set out in the trial court's opinion. Since only the jurisdictional issue is presented, a detailed reiteration of the facts would serve no purpose. Briefly stated, it is the theory of the plaintiffs that the defendants employed manipulative and deceptive devices prohibited by the statute and the rule to induce plaintiffs to invest in a project involving the acquiring of franchises to sell certain burial vaults in Louisiana, Alabama and Georgia, and forming corporations in such states to carry out such purpose. The use of the mails and instrumentalities of interstate commerce in inducing the fraudulent sale is charged.

The trial court, being of the view that the question of jurisdiction presented a possible fact issue and that the question of jurisdiction and liability were closely related, heard the cases without a jury on the merits as well as on the issue of jurisdiction. After a full submission of the cases, the court dismissed the complaints for the reason that "plaintiffs have failed to establish jurisdiction from a factual standpoint." The court did not reach a determination of the cases upon the merits.

The court assumed, without so deciding, that the purchase or sale of a security and the use of a manipulative device was established. For the purpose of a review, we shall follow the same course.

The court determined that jurisdiction was lacking. The court correctly observes that the burden is on the plaintiffs to establish jurisdiction, and then states:

"Conceding, on the authority of Fratt v. Robinson, supra [9 Cir., 203 F.2d 627, 37 A.L.R.2d 636], that if there was sufficient connection between the use of the mails or of interstate commerce and the devices claimed to have been used by defendants, jurisdiction would not be defeated merely because the mail use or the use of interstate commerce may have been innocuous in and of itself, still plaintiffs could not discharge their burden merely by showing that the defendants made some use of the mails or some means or instrumentality of interstate commerce in their overall operation without a further showing that there was a substantial connection between such use and the deceptive or manipulative devices of which complaint is made. Assuming without deciding that the defendants practiced one or more deceptive devices, as defined by Rule X–10b–5, in procuring plaintiffs' investments, and assuming further that those investments amounted to the purchase or sale of 'securities,' plaintiffs have not established any real or substantial connection between such device or devices and any use by the defendants of the mails or of any means or instrumentality of interstate commerce."

Plaintiffs, as a basis for reversal, rely upon Fratt v. Robinson, 9 Cir., 203 F.2d 627, 37 A.L.R.2d 636, and Errion v. Connell, 9 Cir., 236 F.2d 447, and particularly upon an excerpt from the Errion case reading:

"[I]t was sufficient if it were shown that fraud was used or employed *in connection with* the use of instruments of interstate commerce or the mails. Therefore, all that is required is a showing that instruments of interstate commerce or the mails were used and *in connection with that use* a fraudulent act occurred * * *." 236 F.2d 455.

Section 10(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, * * * to use or employ * * * in connection with the purchase or sale, of any security * * *, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule X–10B–5 goes no further than to carry out the statutory authority granted the Commission to designate more specifically the type of manipulative device that shall fall within the statutory prohibition.

Three separate acts are designated in § 10(b), to wit:

1. Use of mails or instrumentalities of interstate commerce.

2. Purchase or sale of a security.

3. Use of a manipulative or deceptive device.

There can be no violation of the statute unless all three acts are proven and a proper relationship among these acts is shown.

The Fratt and Errion cases must be considered in the light of the opinions as a whole and their factual context. Our examination of these cases shows that they were decided upon the basis of a finding that the use of the mail and the fraudulent act bore a direct relationship to the purchase or sale of securities. In Fratt, although the use of the mails took place subsequent to the face-to-face fraud, the mails were used to consummate the security transaction by directing payment of the purchase price. In Errion, the court found the complex scheme to be a single, fraudulent transaction and that instrumentalities of commerce were used in the fraudulent operation.

We agree with the holding in Fratt and Errion that it is not a prerequi-

site to recovery that the mails or commerce be used to transmit the fraudulent representation. We so held in considering a closely related case involving §§ 12 (2) and 17(a) of the Securities Act of 1933, 15 U.S.C.A. §§ 77$l$(2), 77q(a). Creswell-Keith, Inc. v. Willingham, 8 Cir., 264 F.2d 76. We there said:

"The courts have uniformly held that this statute applies when the mails are used in furtherance of a fraudulent scheme, irrespective of whether the misrepresentations were transmitted by mail or in interstate commerce." 264 F.2d 80.

The trial court in its opinion analyzes the evidence pertaining to the use of mails and commerce instrumentalities, and finds that the mails and commerce were employed only in connection with the subsequent efforts to organize foreign corporations and sell stock therein to outsiders, all of which occurred subsequent to the time plaintiffs had acquired their investment and had completed their payment of the purchase price. The court specifically found:

"All of the representations made by defendants were face to face and oral. The concealment of the $10,-000 payments were entirely negative in its nature and did not involve mail use or the use of any instrumentality of interstate commerce. There is no evidence that any documents were ever mailed to plaintiffs by defendants, or that plaintiffs paid their subscriptions through the mails, or even that the mails were used in clearing the checks given by plaintiffs. The trip that Boone made into Louisiana was at a considerable time after he had made his investment and had nothing to do with his making the investment."

Such finding is not challenged by the plaintiffs. Plaintiffs in this appeal do not raise the contention that the use of the mails and commerce in the present situation is analogous to the lulling letter in mail fraud cases. See Bogy v. United States, 6 Cir., 96 F.2d 734. The court, however, considered such contention and disposed of it with the following language:

"[T]he difficulty with plaintiffs' position is that they have failed to show that defendants' use of the mails or of the means and instrumentalities of interstate commerce was intended to defraud the plaintiffs or to promote or further any fraudulent scheme. While it may be that defendants in fact made false representations to plaintiffs which would be actionable at common law, or that defendants owed a fiduciary duty to plaintiffs to disclose the fact that defendants were receiving $10,-000 out of each $15,000 payment made to Arkansas Vault Corporation by the franchisee corporations, the Court is unable to find that defendants' operations were subjectively larcenous in nature. Nor were corporate functions performed for the purpose of lulling plaintiffs to sleep, or to conceal misrepresentations, or to cover up the receipt of the $10,-000 payments."

Such findings are fully supported by the evidence. Moreover, the plaintiffs neither pleaded nor proved that the subsequent activities in attempting to organize the foreign corporations were a part of the fraudulent scheme that induced the plaintiffs' purchase.

It is our conclusion that the court properly interpreted and applied the law to the facts of this case. The court was also fully justified in finding that the alleged fraudulent sale of securities was completed before the mail or commerce transactions disclosed by the evidence came into operation and that the use of the mails or commerce in no way contributed to the sale of the securities here involved, or the collection of the purchase price of such securities. Plaintiffs have failed to establish that the court committed any error in dismissing the complaints.

The judgment appealed from is affirmed.