**JORDAN BUILDING CORPORATION**
et al., Plaintiffs,

v.

**DOYLE, O'CONNOR & CO., Inc., et al.,**
**Defendants.**

No. 64 C 1641.

United States District Court
N. D. Illinois, E. D.

June 28, 1967.

Arnold I. Shure, Robert A. Sprecher, Crowley, Sprecher, Barrett & Karaba, Donald S. Manion, Chicago, Ill., for plaintiffs.

Joseph O. Kostner, George P. Latchford, III, Melvan M. Jacobs, David J. Barry, Milton H. Cohen, Mitchell S. Rieger, Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for Doyle, O'Connor & Co., Inc., a corporation, and others, and John Croghan.

Robert L. Slater, Jr., Jerome Goldberg, Chicago, Ill., for Otto Clark.

Rudy L. Ruggles, Richard E. Wiley, James E. Hastings, Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., for Bryan S. Reid, Jr.

Thomas R. McMillen, Warren C. Haskin, Charles A. Tausche, James B. Moran, Jack M. Whitney, II, Charles T. Martin, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for Bacon Whipple & Co., a partnership, and others.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

The motions in this case were originally ruled upon in Court several weeks ago. However, after having heard further argument of counsel which invoked certain reservations as to the propriety of my disposition of the matter, I vacated that ruling in order that I might reconsider. The motions on which I am ruling are taken on behalf of all the defendants. They are to dismiss Counts I and III of the complaint for failure to state a claim upon which relief can be granted.

This case grew out of the alleged purchase by the plaintiffs of debentures of International Photocopy Company, Inc. The plaintiffs allege that they were induced to purchase these grossly overvalued securities because of material misstatements made by the defendants. For purposes of clarity, it should be noted at the outset that this is not a stockholder's derivative litigation and the problems and controversies growing out of the decision in Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, are not relevant here.

### COUNT I

Count I bases recovery on the conclusion that there has been a violation of Rule 10b–5 of the rules promulgated by the Securities and Exchange Commission under Section 10(b) of the Securities Exchange Act of 1934. The defendants argue that to imply from Rule 10b–5 a buyer's right of action would be inconsistent with the carefully drawn statutory scheme established by the Securities Act of 1933 and the Securities Exchange Act of 1934.

As the parties are aware, in my original ruling which I announced orally in court, I held in favor of the plaintiffs and denied the motion. This action was primarily motivated by my feeling that

since a number of trial courts and several courts of appeals have ruled in favor of implying a right of action under 10b–5 to buyers, so I should follow this trend. However, it is my considered judgment that I should not be so constrained by precedent, which in the light of my independent research and thought I find not wholly persuasive, and particularly when I am in an area of the law in which the Court of Appeals of my Circuit and the Supreme Court have not yet expressed themselves.

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), reads:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange * * * (b) to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations *as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.*

Rule 10b–5 of the Rules and Regulations under the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b–5, promulgated by the Securities and Exchange Commission under the authority of Section 10(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

It is readily seen that Section 10(b) is not self-operative but after setting up a basic area of unlawful conduct causes itself to be applicable only to conduct which in the implementation of it is prohibited by the rules of the Securities Exchange Commission. Rule 10b–5 is the rule that sets out in detail that which in generalities is prohibited by Section 10 (b)

It can also be noticed readily that Rule 10b–5 does not by its terms purport to create any private rights in either buyers or sellers. It simply describes in detail the certain action which "shall be unlawful". Sections 21 and 32 of the Act, 15 U.S.C. §§ 78u and 78ff, provide for public remedies against those who have engaged in actions made unlawful by the Act. I find no section of the Act which for the purposes here creates a private right of action. The plaintiffs, however, would argue that a private right of action should be implied into this rule, and that this right should be recognized by the Courts.

I am not unmindful that many Courts have taken the action which the plaintiffs in the instant case urge by their complaint. See: Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); Boone v. Baugh, 308 F.2d 711 (8th Cir. 1962); Texas Continental Life Insurance Co. v. Dunne, 307 F.2d 242 (6th Cir. 1962); Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); McClure v. Borne Chemical Co., 292 F.2d 824 (3rd Cir. 1961); Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir. 1960); and Fischman v. Raytheon Mfg. Company, 188 F.2d 783 (2d Cir. 1951). However, a careful reading of these cases convinces me that all these decisions leave serious questions unanswered. I must seek to come to a conclusion which, in the case before me, I feel best solves the problem at hand, and best comports with the intention of the Congress which originally

drafted Section 10(b) and the Commission which promulgated Rule 10b–5.

The Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., are both designed to control and regulate the market in securities and should be read together. The 1933 Act regulates the distribution of securities and its emphasis is on the protection of buyers. Section 5 of that statute requires the registration with the SEC of any security offered or sold in interstate commerce, or by use of the mails, unless some exemption is available. The 1933 Act also provides, generally, in its Section 17(a), that it shall be unlawful to offer or sell securities, using interstate facilities or the mails, by any fraudulent means or misleading statements.

Congress provided public remedies for violations of Sections 5 and 17(a). Under Section 20(b) the SEC may sue in a District Court for an injunction, and a willful violation is a crime under Section 24.

It is important to note that Congress did provide three specific private remedies in the 1933 Act. Under Section 11, the issuer and various persons connected with an issue of securities are liable to any buyer of a registered security when the registration statement is false or misleading. Section 12(1) has the effect of permitting the buyer to sue his seller if the seller has violated the registration requirement of Section 5. Section 12(2) is in substance the civil liability corollary of the fraud provision of Section 17(a). Section 12(2) affords a remedy to a buyer only against a seller who has used the mails or interstate facilities to sell any security, whether or not registered or exempt (with certain very limited exceptions), "by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading * * *."

Sections 11, 12(1) and 12(2) of the 1933 Act are carefully drawn and their consideration is relevant to the question presented in the instant case. In Section 11, various affirmative defenses are provided. Subsection (b)(3), for example, generally affords a defendant, other than the issuer, a complete defense if he proves that, after reasonable investigation, he had reasonable ground to believe and did believe that the statements in the registration statement were true and not misleading. Further, Subsection (e) spells out a limited measure of damages and provides that in a suit under Section 11 "or any other section" of the Act the Court, in its discretion, may require an advance undertaking for the payment of costs, including reasonable attorneys' fees, and that such costs may be asserted against the losing party.

Section 12 requires privity between the plaintiff and defendant, as prescribed therein, and provides a specified measure of damages in actions under either Subsection (1) or (2). In actions under Section 12(2), the purchaser must prove that he did not know of "such untruth or omission" and the seller has a complete defense if he proves that "he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission".

Finally, Section 13 of the 1933 Act provides a relatively brief statute of limitations applicable to actions under Sections 11, 12(1) and 12(2).

The 1933 Act was directed towards the process of distribution and the 1934 Act was passed in order to regulate trading. Accordingly, the two fraud provisions of the 1934 Act were made equally applicable to fraudulent sellers and buyers.

Section 15(c) (1) of the 1934 Act prohibits any broker or dealer from using the mails or any interstate facility to effect any transaction in a security otherwise than on a stock exchange "by means of any manipulative, deceptive, or other fraudulent device or contrivance." and also directs the SEC to adopt rules de-

fining such devices or contrivances. This provision is supplemental to Section 17 (a) of the 1933 Act.

However, this legislative scheme still left a gap with respect to purchases by persons other than brokers or dealers who engaged in non-exchange transactions where the seller was induced to sell through fraud. Because of this gap, the SEC had no weapon to deal with most instances of fraudulent purchase of securities. Section 12(2) afforded a remedy for defrauded purchasers, but the defrauded seller was still unprotected.

To cure this situation, in 1942 the SEC adopted Rule 10b–5 for the explicit purpose of closing this "loophole in the protections against fraud administered by the Commission by prohibiting individuals or companies from buying securities if they engage in fraud in their purchase." Securities Exchange Act of 1934, Release No. 3230, May 21, 1942; 3 Loss, Securities Regulation, pp. 1426–1427 (1961 Ed.); Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463 (2d Cir. 1952).

With this background in mind, we can see that a private civil cause of action appears to be implied under the rule in favor of a seller of securities. In Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946), the right of action was implied into Rule 10b–5 on two grounds: First, the common law doctrine which creates torts out of certain kinds of statutory violations, Restatement of Torts, § 286, and second, Section 29(b) of the 1934 Act which declares void any contracts made in violation of the Act or of rules or regulations thereunder.

As pointed out earlier, this implication has been made by many Courts of Appeals in favor of buyers. However, of the cases cited earlier, there was no discussion of the problems involved in the Stevens case, the *Boone* case, the Texas Continental Life Insurance Co. case or the *McClure* case. In the Fischman case, the Second Circuit implied a right of action in favor of buyers. This holding was clearly the result of that

Court having been persuaded that without the implication to buyers of the right of action, purchasers of securities would have no remedy against fraud. However, the result can be explained on the basis of poor advocacy since the Court completely ignored the private remedy under Section 12(2) of the 1933 Act, which is available to purchasers whether or not securities are registered. Awareness of this section would have obliterated any need for implying the right to protect buyers.

In the Hooper case, the Court implied a right of action to buyers based on "the concept that violation of a legislative standards gives those intended to be protected a private right of action provided the injury sustained is other than that suffered by the public generally. See, generally, Restatement of Torts, §§ 286–288." 282 F.2d at 201. However, this doctrine, based on the holding in the Kardon case, can be rationally applied only in the absence of any congressional indication that they meant to deny the right of action the Court may consider implying. In Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123 (E.D.Pa.1948), the Judge who wrote the opinion in the Kardon case held that no right of action should be implied to buyers for violation of 10b–5. He noted that in the situation presented in the Kardon case, there was no congressional indication that injured sellers should not be able to sue under 10b–5, but to imply such a right to buyers would make "a completely incongruous piece of legislation out of the two statutes (the 1933 and 1934 Acts) in question."

The Court in the Ellis case obviously put considerable thought and effort into a consideration of the problem presented by the instant case. They pointed out the various answers which could be given to the problem presented and recognized the anomaly inherent in any decision they came to:

> Read together, the 1933 and 1934 acts, as amended, present certain inescapable anomalies, no matter which of several alternative constructions are

placed on section 10(b). 291 F.2d at 273.

But, that Court decided that the preferable solution to the problem was to imply the right of action to buyers. The Court felt that that result:

> * * * gives controlling weight to what seems to have been the dominant policy of Congress to provide complete and effective sanctions, public and private, with respect to the duties and obligations imposed under the two acts. It requires no variance in procedures under the 1934 act as between buyer and seller, no reason appearing why Congress would have wanted the procedures to be different. While it assumes that Congress in 1934 undid what it carefully did in 1933, it avoids judicial rewriting of the 1934 act * * *. As between two acts which deal with the problem, it permits the most recent enactment to govern. 291 F.2d at 274.

I cannot agree that the solution chosen by the Ninth Circuit in *Ellis* is the best. I am of the opinion that a Court is incorrect in admittedly assuming that Congress in 1934 undid what it carefully did in 1933. Rather, I am convinced that the approach taken by Judge Kirkpatrick in Rosenberg v. Globe Aircraft Corporation, 80 F.Supp. 123 (E.D.Pa.1948), is more faithful to careful legislative construction. In that case, he noted the sections in the 1933 Act which do exist for the benefit of purchasers and concluded:

> It cannot be supposed that Congress intended to abolish these regulations and limitations when it enacted Sec. 10 of the Act of 1934.` By any reasonable rule of statutory interpretation, it would require either an express repeal or an implication of repeal so strong as to be inescapable. The two Acts are unquestionably in pari materia and must be construed together to make a consistent whole. Looking at them as one statute it is simply not possible that Congress, having prescribed in elaborate detail procedural requirements which must be fulfilled in order to enforce civil liability at-

taching to a carefully defined type of violation, would have casually nullified them all in a later section. 80 F.Supp. at 124.

It has been argued by the plaintiffs that I should follow the prior rulings, regardless of their wisdom, for the reason that Congress has not seen fit to change the judicial interpretation by legislation. This argument is based on the assumption that Congress' inaction is a tacit approval of the action taken by the Courts.

█ I find this position wholly unpersuasive. Neither the parties or the Court actually knows why Congress has not acted in this area. If we rely on probabilities, it seems more than possible that their lack of action is due entirely to factors which are absolutely irrelevant to the matter at hand, and if they were known it might very well appear that the inaction should not at all be interpreted as an approval of the action of the Courts. Just as lawyers are taught that the denial of certiorari by the Supreme Court is not meant as approval of the law employed by the Courts below, so too congressional inaction should not be looked upon as any indication of Congress having approved a judicial point of view on the question. When Courts have seen fit for various reasons by their decisions to rewrite statutes and add language that was not previously there, it is my belief that the inaction of Congress should not prevent other Courts from considering anew the wisdom and rationality of the rewritten statute. A rational interpretation of the statute should not be rejected simply because it appears relatively late in the history of the statute.

██ It is my opinion that Congress prescribed a specific statutory remedy under Section 12(2) of the 1933 Act for the protection of a buyer of securities in the position of the plaintiffs in this cause. The specific limitations upon that remedy should not be swept away by judicial implication of a right of action under Rule 10b–5. To do so would allow the plaintiffs, by pleading their claim under Rule

10b–5 to avoid the various carefully drawn requirements which they would have to satisfy if they were suing under Section 12(2). Therefore, I find that the defendant's motion to dismiss Count I must be and hereby is granted.

### COUNT III

Count III of the complaint is based on an alleged violation of the provisions of Section 13 of the Illinois Securities Law of 1953, Ill.Rev.Stat.1961, Ch. 121½, § 137.13. This statute provides in pertinent part:

A. Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section * * *.

B. Notice of any election provided for in sub-section A of this Section shall be given by the purchaser, *within 6 months after the purchaser shall have knowledge that the sale of the securities to him is voidable,* to each person from whom recovery will be sought, by registered letter addressed to the person to be notified at his last known address with proper postage affixed, or by personal service. (Emphasis added).

The complaint alleges in Paragraph 72 that the defendants violated the provision of Section 12 of the Illinois Securities Law of 1953, Ill.Rev.Stat.1961, Ch. 121½, § 137.12. This section provides:

It shall be a violation of the provisions of this Act for any person:

* * * F. To engage in any transaction, practice or course of business in the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof;

G. To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading * * *.

It is further alleged in Paragraph 77 of the complaint that:

Substantially all of the true material facts set forth hereinabove in this Count III, which were misstated, misrepresented or omitted by the defendants in the course of the sale of said securities to plaintiffs, became known to plaintiffs only within less than six months prior to June 23, 1964. On that date, plaintiffs served notice by registered mail on each of the defendants pursuant to said Section 13B of the Illinois Securities Law of 1953.

The defendants have all filed a motion to dismiss the complaint on the grounds that it does not state a claim upon which relief can be granted. The defendants argue that the complaint sets out only when the "true material facts" were known, and is silent as to when the defendants knew the sale was voidable. A sale can be voided only by showing the existence of a misstatement without proof of its exact amount. The defendants argue that the complaint should state when knowledge of the existence of a misstatement became known, not when the nature of the true facts became known.

As the parties are well aware, it was my original position that this question was not ripe for determination until there was some evidence in the form of affidavits, depositions, or testimony in court that knowledge of a misstatement was acquired before knowledge of the true facts. However, upon reconsideration I am of the opinion that I was mistaken.

Section 13, subd. B of the above-quoted statute requires that notice be given within six months from when knowledge was obtained that the sale is voidable. Section 12 provides in general that a sale is voidable if there is a material statement or practice which tends to work a fraud on a purchaser or seller of securities. In order to void a sale, therefore, one does not have to prove the exact extent of any misstatement. This may very possibly never be known even after a full trial. One must show only that there has been a misstate-

ment or fraudulent practice connected with the sale or purchase of securities and that it concerned a material fact.

It is possible that the plaintiffs in the instant case discovered the existence of a misstatement at the same moment that they discovered its true amount. However, if that happened, it was only coincidental. This Court cannot reasonably assume that it did happen at the same time. Therefore, the complaint is not pleaded with sufficient clarity so as to show on its face that the plaintiffs are entitled to relief. In order to succeed under Section 13 of the Illinois Securities Law of 1953, the plaintiffs must plead that they sent notification to the defendants within six months from the date when they had knowledge that the sale was voidable. Since knowledge that a sale is voidable is not the same as knowledge of the true facts, I must conclude that the complaint fails to state a claim upon which relief can be granted. The defendants' motion as to this count also must be and hereby is allowed.