John ASTOR et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants.  And 51 other actions.

Betty B. ALEXANDER et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants.  And 19 other actions.

William H. DARRAUGH, Jr. et al., Plaintiffs,

v.

Francis G. COATES et al., Defendants.

Nos. 65 Civ. 3078, 1632 and 1421.

United States District Court
S. D. New York.

Oct. 31, 1969.

White & Case, New York City, for Texas Gulf Sulphur Co., Fogarty, Mollison, Crawford, Darke, Coates, Stephens, Murray, Huntington, Kline, Holyk, and Clayton.

Reavis & McGrath, New York City, for Astor and Hamill.

Frisch & Goldfluss, New York City, for Blum.

Knapp & Berson, New York City, for Borrack.

Louis Kipnis, New York City, for Brynin.

Abraham I. Markowitz, New York City, for Cloherty, and others.

Pomerantz, Levy, Haudek & Block, New York City, for Colonial Realty Corp. and Fink.

Sidney B. Silverman, New York City, for Darrough, and others.

Kreindler & Kreindler, New York City, for Dyer and Woolley.

Irwin Neugeboren, Laurelton, N. Y., for Fisher.

Frackman & Robins, New York City, for Frackman, and others.

Michael R. Russakow, New York City for Alexander, and others.

Leventritt, Lewittes & Bender, New York City, for Bank of Bermuda.

Lipper, Keeley, Katcher, Lowey & Dannenberg, New York City, for Freiman, Cannon and Green.

Robert M. Gottschalk, New York City, for Greenberg.

Wolf, Popper, Ross, Wolf & Jones, New York City, for Bieber, Moore and Jahss, and others.

Coudert Brothers, New York City, and R. Richard Roberts, Houston, Tex., for Sam Houston L. I. Co.

Rosoff & Rosoff, New York City, for Frey.

Ryan, Temkin & Ginsberg, New York City, for Glatstein, and others.

Lawrence Greenapple New York City, for Greenapple.

Windels, Merritt & Ingraham, New York City, for Brown, Griffin, Kinder and MacIver.

Unterberg & Unterberg, New York City, for Gross.

Andrew A. Gore, New York City, for Harris.

R. Richard Roberts, Houston, Tex., for Helm.

Nemser & Nemser, New York City, for Jagerman, and others.

James S. Eddy, Sacramento, Cal., for King.

Francis C. Leffler, New York City, for Kuck.

Edelberg, Miller & Rothenberg, Los Angeles, Cal., for Lehman.

DeZorett & Venner, New York City, for Marchesano.

Milberg & Levy, New York City, for Weinberger and Marmon.

Stuart D. Perlman and Alan M. Hoffman, New York City, for Manchik.

Fred Parks and Hugh E. McGee, Jr., Houston, Tex., for Meisner.

William Rosenfeld, New York City, for Moran, and others.

Edward J. Brady, Hale, Hynes & Brady, New York City, for Nicholson.

Herbert L. Scharf, New York City, for O'Brien.

Norton, Wood & Moore, Jacksonville, Fla., for Padgett.

Armende Lesser, New York City, for Pomerantz.

William Linden, Henry Wimpfheimer, New York City, for Simon, and others.

Miles & Miles, Brooklyn, N. Y., for Shapiro, and others.

Theodore Propp, New York City, for Siegel.

L. A. Greene, Jr., Houston, Tex., for Spradlin.

Goldstein & Turetsky, New York City, for Vogel.

Speiser, Shumate, Geoghan & Krause, New York City, for Weill.

Leonard J. Reich, New York City, for Wellisz.

Edwin S. Shapiro, New York City, for White and Wells.

Levin, Kreis, Ruskin & Gyory, New York City, for Winters, and others.

Burton R. Abrams and Nathan Engelstein, Chicago, Ill., for Wise.

Koch, Lankenau & Schwartz, New York City, for Zack.

Pomeranz & Pomeranz, New York City, for Zweben.

## OPINION

BONSAL, District Judge.

These are motions for summary judgment. Defendants Texas Gulf Sulphur Company (TGS), and Charles Fogarty, Richard Mollison, David Crawford, Kenneth Darke, Francis Coates, Claude Stephens, John Murray, Earl Huntington, Harold Kline, Walter Holyk, and Richard Clayton (the individual defendants, unless otherwise identified individually by name) move for summary judgment, seeking dismissal of plaintiffs' actions in *Astor, Alexander,* and 58 other actions,[1] on the ground that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. Plaintiffs in *Darraugh* cross-move for summary judgment.

These 60 actions arise out of the events of November 1963 to April 1964, when TGS discovered valuable ore bodies in Timmins, Ontario.[2] Following announcement of the discovery, the Securities and Exchange Commission (S.E.C.) instituted an action against TGS and the individual defendants (65 Civ. 1182) (the S.E.C. action). The S.E.C. alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the 1934 Act), and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated pursuant thereto. The complaint brought by the S.E.C. alleged that certain of the defendants had purchased TGS stock or calls, or acquired stock options, between November 12, 1963 and April 16, 1964, inclusive, on the basis of material inside information concerning the results of TGS drilling in Timmins, Ontario while such information remained undisclosed to the investing public, the Stock Option Committee, and to TGS shareholders who sold during this period; and that TGS issued a deceptive

---

1. Defendants originally moved for summary judgment in 62 actions, but after oral argument, Max Kaufman v. Texas Gulf Sulphur Co., et al., 65 Civ. 3020, was discontinued, and the motion as to A. W. Jones Assoc. v. Texas Gulf Sulphur Co., et al., 65 Civ. 3219, was withdrawn.

2. These events are not detailed here since they are set forth in the opinion of the Court of Appeals, S. E. C. v. Texas Gulf Sulphur Co., 2 Cir., 401 F.2d 833, at 840–841, 843–847, and in the opinion of the District Court, 258 F.Supp. 262, at 268–275.

press release on April 12, 1964. The case was tried by this court, sitting without a jury, and the court's opinion is reported at 258 F.Supp. 262 (S.D.N.Y. 1966). On appeal, the Court of Appeals affirmed in part and reversed and remanded in part, finding that the defendants who had purchased or recommended TGS stock or calls, or had accepted stock options during the period before the material information as to the Timmins drill results was disclosed had violated Rule 10b–5, and directed the District Court to reconsider the matter of the April 12 press release in the light of its opinion (401 F.2d 833 (2d Cir. 1968)).[3]

The actions here involved (hereinafter referred to as the private actions) were brought by former shareholders of TGS seeking money damages, and all but one were filed after the S.E.C. action There are 63 private actions presently pending in this court against TGS and against some or all of the individual defendants named in the S.E.C. action.

In their motion papers, defendants state that 40 of the private actions are brought by shareholders who allege that they sold TGS stock or calls between November 12, 1963 and April 12, 1964, or after April 12, 1964 without reliance on the April 12 press release, and who allege they would not have done so had they known of the material undisclosed inside information; that 10 are brought by shareholders who allege they sold between April 12 and April 16, 1964, inclusive, in reliance on the April 12 press release; and that 10 are brought by shareholders who allege that they sold both before and after April 12, 1964,

and as to sales after April 12, allege reliance on the April 12 press release.

In their motions captioned Astor v. TGS and 51 other actions (hereinafter the *Astor* motion), defendants move for full or partial summary judgment with respect to the claims of plaintiffs who allege that they sold TGS stock or calls between November 12, 1963 and April 12, 1964, or after April 12, 1964 without reliance on the April 12 press release, and who allege they would not have sold had they known of the material undisclosed information.

In their motions captioned Alexander v. TGS and 19 other actions (hereinafter the *Alexander* motion), defendants move for full or partial summary judgment with respect to the claims of all plaintiffs who sold TGS stock or calls between April 12 and April 16, 1964, inclusive, and who allege reliance on the April 12 press release.[4]

### THE ASTOR MOTION

While the complaints vary, in general the plaintiffs charge violations of Rule 10b–5, in that individual defendants purchased or recommended TGS stock or calls, or accepted stock options, while in possession of material undisclosed inside information as to the Timmins drilling results; in that TGS failed to disclose such material information to the TGS shareholders; and in that TGS and the individual defendants "conspired" to conceal the material information while the individual defendants were purchasing or recommending TGS stock or calls, or accepting stock options.[5]

---

3. Defendants Coates and Kline filed petitions for certiorari which were denied on April 21, 1969, Kline v. Securities and Exchange Commission, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969) (Mr. Justice White dissenting as to Kline).

4. Defendants' allocation of plaintiffs between *Astor* and *Alexander* has been followed solely for the purpose of defendants' motions for summary judgment and without prejudice to any of the

parties whose claims may have been incorrectly characterized.

5. There is no evidence to support plaintiffs' allegations that TGS "conspired" with the individual defendants to conceal the material information in order to facilitate their transactions in TGS stock or calls. Therefore, the allegations of conspiracy add nothing to plaintiffs' claims that defendants are liable to them for their violations of Rule 10b–5.

TGS contends that it had no duty to disclose, and indeed had a duty not to disclose, because a proper corporate purpose was served by not disclosing in facilitating the acquisition of mineral rights in the area around the initial drill holes.

The individual defendants who purchased or recommended TGS stock or calls or accepted stock options, during the period of nondisclosure, contend that their failure to disclose violated no duty to the TGS shareholders, and that plaintiffs have no private right of action for damages under Rule 10b–5. Three of the individual defendants, Crawford, Coates, and Murray, add that they had no knowledge of the Timmins drill results prior to April 12, 1964.

Plaintiffs argue that genuine issues of material fact exist, including whether a proper corporate purpose was served in failing to disclose after March 27, 1964, when the land acquisition program was substantially completed and TGS determined to resume drilling; and that important questions of law, including whether they have a private right of action for damages under Rule 10b–5 with respect to securities transactions which took place on a national securities exchange, should not be resolved until a full trial is held—all of which preclude the granting of summary judgment.

For the reasons hereinafter stated, defendants' motions for summary judgment with respect to the claims of plaintiffs whose allegations are encompassed in the *Astor* motion, are granted in part and denied in part, as follows:

a) Defendant TGS' motion, seeking dismissal of plaintiffs' actions as to TGS, is granted as to those plaintiffs who allege they sold their TGS stock (or calls) on or before March 27, 1964; and is denied as to those plaintiffs who allege they sold their TGS stock after March 27, 1964.

b) Defendant Murray's motion is granted.

c) Defendants Crawford's and Coates' motions are denied.

d) The motions of the remaining individual defendants are denied, with the exception of the motions of defendants Mollison and Holyk, seeking dismissal of plaintiffs' actions alleging acceptance of stock options by them without disclosing material information, which are granted.

### a. *Motion of defendant TGS*

In S. E. C. v. Texas Gulf Sulphur, *supra,* 401 F.2d at 850 n. 2, the Court of Appeals stated that "a valuable corporate purpose was served by delaying the publication of the K–55–1 discovery"; that "the timing of disclosure is a matter of business judgment of the corporate officers entrusted with the management of the corporation within the affirmative disclosure requirements promulgated by the exchanges and the SEC."

However, the Court did not find when "the valuable corporate purpose" had been accomplished, nor did it state whether TGS would have had an obligation under Rule 10b–5 to disclose the information about the Timmins drill results once the valuable corporate purpose had been served.

Plaintiffs contend that any such proper corporate purpose in nondisclosure ceased by March 27, 1964, when TGS had purchased or had an option to purchase the four $\frac{1}{4}$ segments of K–55 and had ordered the drilling to resume on March 31, 1964; and that the issue of fact as to when the corporate purpose had ceased precludes granting the motion for summary judgment.

However, TGS urges that there continued to be a proper corporate purpose in nondisclosure after March 27, 1964, inasmuch as TGS was still negotiating for the purchase of the 10% override interests in the Hendrie and Woolings properties.

Whether TGS had a proper corporate purpose in not disclosing after March 27, 1964, and whether the lack of such corporate purpose would give rise to a duty to disclose, involve issues which cannot be determined on those motions for summary judgment.

However, in light of the Court of Appeals decision, the court finds that TGS had no duty to disclose on or before March 27, 1964, and the motion of defendant TGS is granted as to the claims of those plaintiffs who allege that they sold TGS stock on or before March 27, 1964.

### b. *Motion of defendant Murray*

■ John Murray was employed as an office manager by TGS during the period involved. He is named a defendant in 36 of the 51 private actions included in the *Astor* motion. Plaintiffs in these actions allege that he knew material information concerning the Timmins drill results, conspired to conceal the information, and, on January 8, 1964, while in possession of the material undisclosed information, purchased 400 shares of TGS stock.

The same allegations were made in the S.E.C. action which was dismissed as to Murray, the District Court finding that:

"Murray had no detailed knowledge as to the work and hence [was] not in possession of material information * * * [He] had no knowledge of the situation on the Kidd 55 segment at the time he made his purchases." (258 F.Supp. at 281.)

The Court of Appeals affirmed. "There is no evidence * * * suggesting that Murray purchased his stock on January 8, 1964, on the basis of material undisclosed information, * * *." (401 F.2d at 852 n. 14.)

No additional evidence has been offered which would suggest that Murray's purchase may have been in violation of Rule 10b–5. Finding no genuine issue of fact, Murray's motion for summary judgment is granted.

### c. *Motions of Defendants Crawford and Coates*

David Crawford, TGS' secretary in 1963 and 1964, is named as a defendant in 41 actions, and Francis Coates, a director of TGS in 1963 and 1964, is named in 36.

Plaintiffs allege that on April 16, 1964, Crawford and Coates purchased TGS stock or passed on to others material information as to the Timmins drill results when this information had not been disclosed to the shareholders of TGS or the public.

Defendants Crawford and Coates move for summary judgment on the ground that there is no genuine issue of fact that they did not purchase TGS stock or have knowledge of the Timmins drill results until April 15 or 16, 1964, well after the April 12 date which they deem significant, but before the April 16 press release made public the information relative to the Timmins drill results.

Although it does not appear that prior to April 12, 1964 Crawford and Coates had knowledge of the Timmins drill results or purchased TGS stock, they did have such knowledge when they purchased TGS stock for themselves or advised others to do so during the period of nondisclosure. See 401 F.2d at 854–856.

Therefore, Crawford's and Coates' motions will be considered with those of the remaining individual defendants (see subsection d. below).

### d. *Motions of Remaining Individual Defendants*

■ The remaining individual defendants (including Crawford and Coates) purchased or recommended TGS stock or calls, or accepted stock options, on or before April 16, 1964, while in possession of material undisclosed information concerning the Timmins drill results.

The Court of Appeals held that "all transactions in TGS stock or calls by individuals apprised of the drilling results of K–55–1 were made in violation of Rule 10b–5 * * *." (401 F.2d at 852).

Defendants contend that they had no duty to disclose the information to the TGS shareholders and that their transactions do not give rise to private actions for damages against them.

However, the Court of Appeals found that the failure to disclose violated no duty so long as defendants did not purchase or recommend stock or calls or accept stock options, and that the violation of Rule 10b–5 was in trading while in possession of material undisclosed inside information. The Court held:

"[A]nyone in possession of material inside information must either disclose it to the investing public, or, if he is disabled from disclosing it in order to protect a corporate confidence, or he chooses not to do so, must abstain from trading in or recommending the securities concerned while such inside information remains undisclosed. So, it is here no justification for insider activity that disclosure was forbidden by the legitimate corporate objective of acquiring options to purchase the land surrounding the exploration site; if the information was, as the SEC contends, material, its possessors should have kept out of the market until disclosure was accomplished. Cady, Roberts, supra at 911." (401 F.2d at 848) (Footnote omitted.)

■ There remains the question whether plaintiffs who sold TGS stock on a national securities exchange during the same period when the individual defendants while in possession of material undisclosed information bought or recommended TGS stock or calls or obtained stock options have a private right of action for damages against these defendants.

While no private right of action is specified in Section 10(b) or Rule 10b–5, such right has been recognized by the Court of Appeals, Fischman v. Raytheon Manufacturing Co., 188 F.2d 783 (2d Cir. 1951); McClure v. Borne Chemical Co., 292 F.2d 824 (3d Cir. 1961); Hoop-

er v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960); Texas Continental Life Insurance Co. v. Dunne, 307 F.2d 242 (6th Cir. 1962); Jordan Building Corp. v. Doyle, O'Connor & Co., 401 F.2d 47 (7th Cir. 1968); Boone v. Baugh, 308 F.2d 711 (8th Cir. 1962); Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965), and impliedly, by the Supreme Court, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

This private right of action is predicated on the grounds (1) that a person injured by a violation of a statute enacted for his benefit is entitled to sue on his own behalf and recover his damages, Restatement, Torts § 286 (1934); Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946); (2) that the aims of the 1934 Act require that the investing public be completely and effectively protected, Baird v. Franklin, 141 F.2d 238, 245 (2d Cir. 1944), and "it is for the federal courts 'to adjust their remedies so as to grant the necessary relief' where federally secured rights are invaded." J. I. Case Co. v. Borak, supra 377 U.S. at 433, 84 S.Ct. at 1560, and (3) that, in order to enforce Section 29 of the 1934 Act, a party to a void contract should have the right to "apply to the Courts to relieve himself of obligations under it or to escape its consequences." Kardon v. National Gypsum Co., supra 69 F.Supp. at 514; Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 n. 4 (2d Cir. 1951).[6]

The Supreme Court has stressed the courts' duty to provide remedies necessary to make effective the congressional purposes of the securities acts, see J. I. Case Co. v. Borak, supra 377 U.S. at 433, 84 S.Ct. 1555;[7] cf. S. E. C. v. Capital

6. The third ground would not apply here unless a plaintiff-seller can show that he was in privity with a defendant-buyer, which defendants deny. See Bromberg, Securities Law: Fraud—SEC Rule 10b–5, Sec. 2.4(1) (b), p. 32 (1968); Note, Insiders' Liability under Rule 10b–5, 78 Yale L.J. 864, 873–874 (1969).

7. In Borak, "the Court was stating that a private right of action arises from [the 1934 Act] itself merely because Congress intended to protect investors.

"The Court's conclusion in Borak that a private right of action is contained in the 1934 Act itself can be expected to be extended to Rule 10b–5. This probable development will carry with it important

Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). This Circuit has emphasized that "before there may be a violation of the securities acts there need not be present all of the same elements essential to a common law fraud, * * *." Globus v. Law Research Service, Inc., 418 F.2d 1276, at p. 1291 (2d Cir. September 8, 1969); see S. E. C. v. Capital Gains Bureau, *supra* 375 U.S. at 192 n. 39, 84 S.Ct. 275.

The power of the federal courts to "adjust their remedies" where Rule 10b–5 has been violated, J. I. Case Co. v. Borak, *supra* 377 U.S. at 433, 84 S.Ct. 1555, may be invoked in situations of "inherent unfairness * * * where a party takes advantage of [undisclosed corporate] information knowing it is unavailable to those with whom he is dealing." Cady, Roberts & Co., 40 S.E.C. 907, 912 (1961).

It will be noted that no privity appears to have existed between plaintiffs-sellers and defendants-buyers; defendants made no representations and the transactions were executed on an essentially anonymous market. Therefore, reliance which "refers to an attitude taken by the plaintiff[-seller] towards the defendant[-buyer] * * * when applied to cases of non-disclosure that involve dealings on an exchange * * * is incongruous." Painter, Federal Regulation of Insider Trading, 106, 109 (1968).

Reliance and causation are often used interchangeably. In the leading case of List v. Fashion Park, Inc., 340 F.2d 457, 462–463, 22 A.L.R.3d 782 (2d Cir.), cert. denied sub nom. List v. Lerner, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), the court stated:

"[T]he test of 'reliance' is whether 'the misrepresentation is a substantial

factor in determining the course of conduct which results in [the recipient's] loss.' * * * The reason for this requirement * * * is to certify that the conduct of the defendant actually caused the plaintiff's injury. * * *

\* \* \* \* \* \*

" * * * [T]o abandon the requirement of reliance would be to facilitate outsiders' proof of insiders' fraud, * * * [b]ut this strikes us as an inadequate reason for reading out of the rule so basic an element of tort law as the principle of causation in fact. * * *

\* \* \* \* \* \*

"The proper test [of reliance] is whether the plaintiff would have been influenced to act differently than he did act if the defendant had disclosed to him the undisclosed fact."

If the *List* test is applied, recovery by the plaintiffs depends on their being able to establish at trial that they would not have sold their stock had the material information been disclosed to them. Moreover, as Painter points out, "the sale may have been made at a price which is influenced by factors unrelated to the defendant's conduct and, although one may say that the *sale* may have been caused by the defendant, the actual damage may have been due to other forces acting on the market." (Painter, *supra* at 107.)

According to the decision of the Court of Appeals, the violation of Rule 10b–5 by defendants Fogarty, Mollison, Crawford, Darke, Coates, Huntington, Holyk, and Clayton was in purchasing or recommending TGS stock or calls without disclosing material information. Had they neither bought nor recommended TGS securities, there would have been no duty to disclose. The Court of Appeals

implications for a construction of the rule in private actions. If the private right of action exists by direct implication from the statute itself, federal courts will be free in interpreting Rule 10b–5 to fashion policy which is not hampered by the logical complications inherent in

the doctrines traditionally advanced to support the private right of action under Rule 10b–5 * * *." Ruder, Texas Gulf Sulphur—The Second Round: Privity and State of Mind in Rule 10b–5 Purchase and Sale Cases, 63 Nw.L.Rev. 423, 432–33 (1968).

held that defendants Fogarty, Stephens, and Kline violated Rule 10b-5 when they accepted stock options without disclosing material information.[8] Therefore, applying the *List* test of reliance, the question is whether the plaintiffs or any of them would have been influenced to act differently than they did if they had known the material information at the time of sale, and if they would, whether they were damaged by defendants' conduct. Plaintiffs have stated claims under Rule 10b-5 (see 401 F.2d at 852). Determination of liability, what damage, if any, plaintiffs suffered, and what remedy is appropriate, must await trial.

As to plaintiffs' claims alleging purchases or recommendations of TGS stock or calls without disclosure of material information, the motions for summary judgment of defendants Fogarty, Mollison, Crawford, Darke, Coates, Huntington, Holyk, and Clayton are denied.

■ As to plaintiffs' claims alleging *acquisition of stock options* without disclosure of material information, the motions for summary judgment of defendants Fogarty, Stephens, and Kline are denied, and those of Mollison and Holyk are granted.

### THE ALEXANDER MOTION

In the *Alexander* motion, TGS and the individual defendants move for summary judgment on the ground that there is no genuine issue as to any material fact,

and that they are entitled to summary judgment as a matter of law with respect to the claims of all plaintiffs who sold their TGS stock or calls after the April 12, 1964 press release and who allege that in so doing they relied on the April 12 press release.[9] Some of the individual defendants assert that there is no genuine issue of material fact that they took no part in the preparation of the April 12 press release and had no knowledge of it until after it was issued.

Plaintiffs allege that they sold TGS shares between April 12, 1964 and April 16, 1964, inclusive, in reliance on the April 12 press release, and further that the April 12 press release was false and misleading; that defendants acted in concert or conspired to conceal the Timmins drill results;[10] and that the false and misleading press release was for the purpose of depressing the price of TGS stock to facilitate purchases by the defendants.[11]

For the reasons hereinafter stated, defendants' motions for summary judgment, with respect to the claims of plaintiffs who allege that they sold their TGS stock between April 12 and April 16, 1964 inclusive, in reliance on the April 12 press release, are granted in part and denied in part, as follows:

a) The motion of defendant Murray for summary judgment is granted.

b) The motions of defendants TGS and Stephens, Fogarty, Mollison, and Hunt-

8. This court's finding that Mollison and Holyk, not being members of top management, had no duty to disclose their knowledge of the drilling before accepting stock options was not disturbed on appeal, 401 F.2d at 857.

9. In their *Astor* motion, defendants moved for summary judgment with respect to all plaintiffs who sold after April 12, 1964 without reliance on the April 12 press release. Though defendants characterize all claims included in the *Alexander* motion as ones in which plaintiffs allege reliance on the April 12 press release, insofar as these plaintiffs do not solely claim reliance on the release, but also allege that they sold their stock after April 12, 1964 during the period when

the individual defendants, while in possession of material undisclosed information, bought of recommended TGS stock or calls or accepted stock options, and allege that they would not have sold had they known the material undisclosed information, their claims have been considered and ruled upon in the *Astor* motion.

10. See note 5, *supra*.

11. A motion to have all actions in which plaintiffs allege sales of TGS stock between April 12 and April 16, 1964, inclusive in reliance on the April 12 press release designated as a class action has been conditionally granted. Cannon v. Texas Gulf Sulphur Co., 47 F.R.D. 60 (S.D.N.Y.1969).

ington, who participated in the preparation or issuance of the April 12 press release, are denied.

c) The motions of defendants Clayton, Crawford, and Coates, who purchased shares of TGS or disclosed material information to others following the issuance of the April 12 press release, and on or before April 16, 1964, are denied.

d) The motions of defendants Darke, Kline, and Holyk, who did not participate in the preparation or issuance of the April 12 press release, and who did not purchase TGS stock or calls or make recommendations to others after the issuance of the press release, are granted.

a. *The Motion of Defendant Murray*

■ The Court of Appeals found that Murray was not in possession of material undisclosed information. He purchased his TGS shares prior to the issuance of the April 12 press release and he did not participate in its preparation or issuance. Finding no genuine issue of material fact, Murray's motion for summary judgment is granted.

b. *The Motions of Defendants TGS, Fogarty, Stephens, Mollison and Huntington*

Defendants TGS and the individual defendants who participated in the preparation and issuance of the April 12 press release contend that there is no genuine issue of fact that the press release was not prepared with an evil motive; and, even if it was misleading or negligently prepared, there is no liability in damages.

Defendants state in their memorandum that, "[f]or purposes of this motion, we may accept as true plaintiffs' unsupported claims that the release was negligently prepared, that it was in fact misleading, and that plaintiffs were misled thereby. However, even assuming *arguendo* such negligence and deception, there can be no liability here as a matter of law." Defendants contend that a majority of the Court of Appeals in S. E. C. v. Texas Gulf Sulphur, *supra*, held that no liability in damages should attach to the mere negligent preparation and issuance of the press release. While the Court "[did] not find it necessary to decide whether just a lack of due diligence on the part of TGS, absent a showing of bad faith, would subject the corporation to any liability for damages" (401 F.2d at 863), in his concurring opinion, Judge Friendly stated at 866, 868:

> "The consequences of holding that negligence in the drafting of a press release such as that of April 12, 1964, may impose civil liability on the corporation are frightening.
>
> \*   \*   \*   \*   \*   \*
>
> "\* \* \* it is at least clear that the April 12 press release would be the worst possible case for the award of damages for merely negligent misstatement, as distinguished from the kind of recklessness that is equivalent to wilful fraud, see SEC v. Frank, 388 F.2d 486, 489 (2 Cir. 1968)."

■ While some degree of scienter is required, "the trend is clearly away from enforcing a scienter requirement equal to the 'intent to defraud' required for common law fraud." Globus v. Law Research Service, *supra* 418 F.2d 1276 at p. 1291. What degree is necessary, whether it is "actual knowledge of falsity," Heit v. Weitzen, 402 F.2d 909, 914 (2d Cir. 1968), or "recklessness \* \* \* equivalent to wilful fraud," S. E. C. v. Texas Gulf Sulphur, *supra* 401 F.2d at 868, is not entirely clear.[12] Until the

---

12. "Many commentators have suggested that the ingredients which constitute a violation of the Rule should be the same whether the SEC is seeking an injunction or a private party is bringing an action. Others, however, feel that something more should be required in a suit for damages. This view, that some form of scienter is necessary for a private action under 10b–5, is in part an attempt to equalize the requirements of the Rule with the express civil liability provisions of the 1933 and 1934 Acts, so that the restrictions of these latter sections would not be rendered meaningless. Courts have generally accepted the view that less need be shown in an injunction action, but

"great debate over ordinary negligence versus scienter in private actions under 10(b) and Rule 10b–5", Globus v. Law Research Service, *supra* 418 F.2d 1276 at 1291, is resolved, this court will adhere to the most recent views expressed by this Circuit, that plaintiffs must show more than that the April 12 press release was negligently prepared. They must show some degree of scienter.

Defendants concede that TGS had a motive in not disclosing material facts as to the Timmins drill results prior to April 12, in that TGS wished to acquire mineral rights in the area surrounding K–55, but they contend that this motive did not influence the contents of the April 12 press release. The defendants who drafted the press release, Stephens, Fogarty, Huntington, and Mollison, knew about both the drilling program and the land acquisition program. In these circumstances, these defendants may not have told "what TGS knew," S. E. C. v. Texas Gulf Sulphur, 401 F.2d at 866.

Defendants urge that no evidence has been produced by plaintiffs to indicate any fraudulent motives by defendants in preparing the April 12 release.[13]

However, fraudulent motives, in the traditional common law fraud sense, need not be shown, see S. E. C. v. Great American Industries, 407 F.2d 453, 463 (2d Cir. 1968), cert. denied, 395 U.S. 920, 89 S.Ct. 1770, 23 L.Ed.2d 237 (1969) (Concurring opinion, Kaufman, J.), since the traditional notion of scienter is not applicable. *Heit* and *Globus* indicate that knowledge of the falsity of statements may be sufficient.

In determining issues of motives, intentions, or knowledge, summary judgment should be used sparingly, see Schoenbaum v. Firstbrook, 405 F.2d 215 (2d Cir. 1968) (en banc), cert. denied sub nom. Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); American Messer Corp. v. Travelers Indemnity Co., 45 F.R.D. 265 (S.D.N.Y.1968).

Therefore, since issues of fact exist as to defendants' knowledge and motives in drafting the April 12 press release, and because determination of liability, if any, what damage, if any, plaintiffs suffered, and what remedy is appropriate, must await trial, the motions for summary judgment of defendants TGS, Stephens, Fogarty, Mollison, and Huntington, are denied.

c. *The Motions of Defendants Clayton, Crawford, and Coates*

The Court of Appeals found that defendants Clayton, Crawford, and Coates violated Rule 10b–5 in purchasing TGS stock or recommending it to others after the issuance of the April 12 press release and before the April 16 press release became public knowledge. It does not appear that any of these defendants participated in the preparation or issuance of the April 12 press release or that they were aware of its contents until after it was issued. However, the granting of summary judgment is precluded since plaintiffs may establish at trial that the press release was false and misleading and that these defendants knew of its false and misleading character when they purchased TGS stock or recommended it to others. Determina-

are divided as to the degree of scienter necessary in a suit for damages. The problem is further complicated by courts which say that 'scienter' is required, but in fact are satisfied with far less than an intent to defraud." (Scienter and Rule 10b–5, 69 Colum.L.Rev. 1057, at 1063 (1969)) (Footnotes omitted.)

13. In a recent decision involving four private actions against the Texas Gulf Sulphur Company, the District Court for the District of Utah, Ritter, C. J., found that "the [April 12, 1964] press release

issued by defendants was misleading, intentionally deceptive, inaccurate and knowingly deficient in material facts pertaining to the results of drilling." Reynolds v. Texas Gulf Sulphur Co. and Fogarty, Civil No. 132–66, Mitchell v. Texas Gulf Sulphur Co. and Fogarty, Civil No. 62–67, Karlson, et al. v. Texas Gulf Sulphur Co. and Fogarty, Civil No. 59–67, Stout v. Texas Gulf Sulphur Co. and Fogarty, Civil No. 54–67 (D.Utah, filed Oct. 17, 1969) at 24.

tion of their liability, if any, what damage, if any, plaintiffs suffered, and what remedy is appropriate, must await trial. Accordingly, the motions for summary judgment of defendants Clayton, Crawford, and Coates are denied (without prejudice to defendant Clayton's claim that he has not been served and has not appeared in any of the actions included in the *Alexander* motion).

d. *The Motions of Defendants Darke, Kline, and Holyk*

▋ Defendants Darke, Kline, and Holyk made no purchases of TGS stock or calls after the issuance of the April 12, 1964 press release, nor did they disclose material information to others after its issuance. They did not participate in the preparation or issuance of the release. Accordingly, their motions for summary judgment as to the claims of those plaintiffs who allege they sold their stock in reliance on the April 12 press release are granted.

## THE DARRAUGH CROSS-MOTION

Plaintiffs in *Darraugh* (one of the actions which defendants characterize as being brought by plaintiffs who allege sales of TGS stock or calls both before and after April 12, 1964 without reliance on the April 12 press release) cross-move for summary judgment against TGS and the individual defendants who bought TGS stock or calls or recommended TGS securities to others between November 12, 1963 and April 16, 1964, inclusive.

Plaintiffs contend that the failure of TGS to disclose information as to the drilling results at Timmins after March 31, 1964 served no proper corporate purpose and that TGS shareholders who sold after March 31, 1964 are entitled to summary judgment against defendant TGS for their damage. Plaintiffs also claim that those shareholders who sold their TGS stock between November 12, 1963 and April 16, 1964, inclusive, are entitled to summary judgment requiring the in-

dividual defendants to turn over to a fund all profits made by them and their tippees through purchase of TGS stock and calls by them and their tippees during that same period.[14]

This cross-motion raises a number of questions similar to those raised in the *Astor* motion, and for the reasons hereinbefore stated, they may not be resolved in a motion for summary judgment.

Settle Orders on Notice.

---

14. Plaintiffs in *Darraugh* also moved to maintain a class action under Rule 23, Fed.R.Civ.P., but it was determined at argument that this should be the subject of a subsequent separate motion.